**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

IN RE:
DONNA M. DIMARE,                                          Chapter 13
　　　　　　　　DEBTOR                                  Case No. 08-10598-WCH

_____

DONNA M. DIMARE,
　　　　　　　　PLAINTIFF

　　　　　　　　　　　　　　　　　　　　　　　Adversary Proceeding
v.                                                        No. 08-01046-WCH

AMERIQUEST MORTGAGE COMPANY AND
OPTION ONE MORTGAGE CORPORATION,
　　　　　　　　DEFENDANTS

_____

**MEMORANDUM OF DECISION**

I. **INTRODUCTION**

The matter before the Court is Ameriquest Mortgage Company's (the "Defendant's") Motion

to Dismiss Adversary Proceeding (the "Motion to Dismiss") and Donna M. DiMare's (the

"Debtor's") Objection to Motion of Ameriquest to Dismiss ("the Objection"). Through the Motion

to Dismiss, the Defendant seeks to dismiss the Debtor's claims, contending that the Debtor's claims

are untimely, not factually supported, and not plead with sufficient particularity. For the reasons set

forth below, the Defendant's motion is granted in part and denied in part.

II. **BACKGROUND**

I accept all of the Debtor's well-pleaded facts as true.[1] The Debtor, with only a high school

education, is unsophisticated in financial matters. Ten years ago, she was diagnosed with

_____

[1] _See Pasdon v. City of Peabody_, 417 F. 3d 225, 226 (1st Cir. 2005).

1

fibromyalgia, a disabling medical condition that leaves the Debtor physically unable to work.

Despite her medical condition, the Debtor does not qualify for social security disability benefits. In

2001, the Debtor and her husband divorced. Under the terms of the divorce, the Debtor was awarded

full ownership of the couple's home, as well as child support and alimony. The child support and

alimony payments are the Debtor's primary source of income, which she supplements with the $200-

$300 dollars she earns a year selling homemade projects. The alimony and child support payments

will end in 2011, although the child support payments could potentially end sooner if the Debtor's

son does not remain enrolled in school.

Following the divorce, the Debtor approached Washington Mutual, the Debtor's then current

mortgagee, to obtain information on how to remove her ex-husband's name from the mortgage. To

achieve this end the Debtor was told she would have to refinance. She did not, however, earn

enough income to qualify for refinancing with Washington Mutual. While the Debtor was seeking

a lender with whom she would qualify, she received a call from one of the Defendant's salespersons.

The salesperson assured the Debtor that she would qualify to refinance her home with the Defendant,

regardless of the Debtor's income. The salesperson explained to the Debtor that she could continue

to decrease her monthly mortgage payment by refinancing again in three months, then in six months,

and then one year after that. Finding a lower monthly payment appealing, the Debtor completed a

loan application, but based on her limited income, the Debtor did not believe that she would qualify.

After the Debtor submitted her application, the Defendant began questioning the Debtor

about her income. Despite the Debtor's explaination that her earnings from her homemade goods

was not a stable source of income, the Defendant approved the Debtor for a loan with a fixed interest

rate. At the same time she was told she was approved, the Debtor reviewed the terms of the loan,

which she found agreeable and consistent with what she was told earlier. Further, she was told that

she would not be responsible for paying the pre-payment penalty to Washington Mutual, and that there would not be any other fees associated with her refinance.

At the closing on February 20, 2004, both the Debtor and the Defendant's salesperson, with whom the Debtor had been dealing, were present. The Debtor was not represented by an attorney, but with the assistance of the Defendant's attorney, the Debtor reviewed and signed all of the closing documents. The Defendant's attorney explained every page the Debtor had signed, and "everything appeared to be in order" to the Debtor.[2] She was not, however, given any signed or unsigned copies of the documents at the closing. Approximately ten days after the closing, the Debtor received a check from the Defendant, which was less than half of what she had expected to receive. When the Debtor called the Defendant to address the discrepancy, the Defendant insisted that the amount was correct and explained that the Defendant had paid off other debts and had charged the Debtor fees and penalties. The following week, the Debtor received unsigned copies of the closing documents, which likewise contained terms that differed from those explained to the Debtor at closing. These terms included a variable interest rate, a monthly payment that was significantly higher than the payments she was making to Washington Mutual, and a charge for fees and costs to which the Debtor never agreed. Over the next several months, the Debtor made numerous calls to the Defendant in an effort to rectify the problems.

The Debtor timely paid the mortgage for three months despite her problems with the Defendant. At the end of the three months, the Debtor sought to refinance again, as the payments started to become more difficult to make. Although she was previously assured she would be able to refinance again to lower her monthly payment, the Debtor was told it was not possible at this time.

---

[2] Complaint, Docket No. 1 at ¶ 27.

Shortly afterwards, the Defendant began a foreclosure proceeding.  Around this same time, the

Debtor received a call from a salesperson representing Aegis Lending Corporation ("Aegis") who

assured the Debtor that Aegis could help her lower her monthly mortgage payments.  Impressed that

the salesperson was fully apprised of the issues she was having with the Defendant, the Debtor

decided to refinance with Aegis.  In August, 2005, the Debtor attended a closing with Aegis, but

once again faced changes in the loan terms.  Desiring to avoid foreclosure, the Debtor accepted the

new terms, including the change in lender from Aegis to Option One Mortgage Corporation ("Option

One").  Shortly after the August, 2005 closing, the Debtor began having difficulties making her

monthly payments.  While she tried to discuss her problems with Option One to no avail, Option One

initiated a foreclosure proceeding.

On December 15, 2006, the Debtor filed a voluntary petition for relief under Chapter 13 of

the Bankruptcy Code.  In that case, the Debtor commenced an adversary proceeding by filing a

complaint on August 22, 2007.  In her complaint, the Debtor asserted claims against the Defendant,

Option One, and Aegis Lending Corporation alleging  negligence, fraud, emotional distress, breach

of contract, and violations of the Federal Truth in Lending Act ("TILA")[3] and the Massachusetts

Consumer Credit Disclosure Act ("CCCDA").[4]  The Defendant filed a Partial Motion to Dismiss the

Adversary Proceeding on grounds that the Debtor's claims were untimely, not factually supported,

and not plead with sufficient particularity.  The Debtor objected, arguing that 11 U.S.C. § 108(a)

extends the statutory time period to file her claims, and that her claims were sufficiently pled and

factually supported.  Judge Feeney held a hearing on the matter, and subsequently took it under

---

[3] 15 U.S.C. § 1601 et. seq.

[4] Mass. Gen. Laws ch. 140D, § 1 et. seq.

advisement.  Prior to a decision on the matter, the Debtor's bankruptcy case was dismissed for failure

to make plan payments on January 2, 2008, resulting in the dismissal of the adversary proceeding

on January 23, 2008, for lack of jurisdiction.

The Debtor filed a second bankruptcy petition on January 29, 2008, and subsequently

commenced an adversary proceeding against the Debtor and Option One on March 9, 2008.  Through

her seven-count Verified Adversary Complaint (the "Complaint") the Debtor seeks recovery from

the Defendant and Option One on the following counts: Count I - Negligence; Count II - Promissory

Fraud; Count III - Violations of the Federal and/or State Truth in Lending Acts; Count IV -

Borrower's Interest; Count V - Unconscionability; Count VI - Restitution; Count VII -  Emotional

Distress.[5]  After receiving an extension of time to respond to the Debtor's complaint, the Defendant

filed the Motion to Dismiss on June 11, 2008.  The Debtor filed the Objection on July 16, 2008.  I

held a hearing on the Motion to Dismiss on September 11, 2008, and at its conclusion, took the

matter under advisement.

## III. POSITIONS OF THE PARTIES

A. The Defendant

The Defendant moved to dismiss this adversary proceeding on numerous grounds.  First, the

Defendant argues that Counts I, II, III, and VII are barred by the applicable statutes of limitation.

Having notice of these claims shortly after the February 20, 2004 closing, the Defendant contends

that the Debtor has no equitable justification for tolling the expired statutes of limitation.

Additionally, the Defendant asserts that the Debtor would not be entitled to reassert her claims under

---

[5] In the Complaint, the Debtor labeled both her unjust enrichment and emotional distress
claims as Count VI.  I have relabeled the emotional distress count as Count VII.

11 U.S.C. § 108(a), as the plain language of the statute makes that section unavailable to a Chapter 13 debtor, and even if it did, the Debtor did not file her petition for relief until after the applicable statutes of limitation expired, excluding her from the benefits of Section 108(a).[6]

Next, the Defendant maintains that notwithstanding the expiration of the statutes of limitation, the Debtor has failed to plead fraud with requisite particularity required by Fed. R. Civ. P. 9(b), made applicable to this proceeding by Fed. R. Bankr. P. 7009. Relying on the heightened pleading requirement for fraud as enunciated by the United States Court of Appeals for the First Circuit, the Defendant argues that the Debtor does not "specify the time, place, and content of the alleged false or fraudulent representations."[7] Further, the Defendant cites to *In re Reyes* in asserting that it would be futile to allow the Debtor to amend her complaint to conform to the heightened standard because it would not cure the claim's untimeliness.[8]

Relying on *Palmer v. Champion Mortgage*[9] and *Carye v. Long Beach Mortgage Company,*[10] the Defendant asserts that the Debtor's receipt of closing documents following the February 20, 2004 closing provided her with legally adequate notice of her right to rescind. Moreover, the Defendant contends that the Debtor's allegations of pre-closing violations of TILA and CCCDA would, at best, allow for recovery of statutory damages, not rescission.

---

[6] While the Debtor argued the applicability of 11 U.S.C. § 108(a) in the prior adversary proceeding, she did not do so in this proceeding. Therefore, that argument is waived and I need not consider it.

[7] *See U.S. ex rel Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir. 2004).

[8] *In re Reyes*, 238 B.R. 507, 514 (Bankr. D.R.I. 1999) (finding it "futile to allow plaintiff to amend her complaint, since her claim fails on a separate ground.")

[9] *Palmer v. Champion Mortgage*, 465 F.3d 24 (1st Cir. 2006).

[10] *Carye v. Long Beach Mortgage Co.*, 470 F. Supp.2d 3 (D. Mass. 2007).

The Defendant also seeks to dismiss the Debtor's claim under the Massachusetts borrower's interest statute, as the statute was not in effect at the time of the February 20, 2004 mortgage transaction. Additionally, the Defendant argues that the Debtor has failed to support her claim for unconscionability with factual allegations and has only vaguely stated the injuries she has suffered as a result of the Defendant's alleged unconscionable conduct. Finally, the Defendant contends that the Debtor is precluded from seeking restitution as a result of unjust enrichment, as it is an equitable remedy that is unavailable where a contract controls the parties' relationship.

B. The Debtor

The Debtor objected to the Defendant's Motion to Dismiss, arguing that her complaint sounds in recoupment, and as such, under *In re Fidler*,[11] none of her claims are time-barred. At the hearing, however, the Debtor conceded that recoupment is unavailable in this proceeding, as the Defendant is not asserting a claim against the Debtor. Instead, Debtor's counsel suggested the objection was "less clear than [it] could have been" and that the Debtor meant to argue equitable tolling.[12] As such, the Debtor asserted for the first time that her CCCDA claims should be equitably tolled because, as an unsophisticated person, she had no reason to believe at the closing, or a significant time thereafter, that something illegal occurred when the papers seemed in order to her. Moreover, just prior to the conclusion of the hearing, Debtor's counsel raised for the first time the question of whether all the Debtor's untimely claims may have been equitably tolled as a result of her first bankruptcy case. The Debtor cited no authority in support of this position and did not file, or request the opportunity to file, a supplemental brief on this issue. In the Objection, the Debtor

---

[11] *Fidler v. Central Coop. Bank (In re Fidler)*, 210 B.R. 411 (Bankr. D. Mass. 1997).

[12] Transcript of Hearing, September 11, 2008 ("T-"), T-9, L 12-16.

contends that her claim for fraud satisfies Fed. R. Civ. P. 9(b), as the facts sufficiently put the

Defendant on notice of the acts that constituted fraud.  Further, the Debtor maintains that her receipt

of closing documents does not lend to the inference that the required disclosures under TILA and

CCCDA were also included with those documents.  Even if the Debtor received the notice of

rescission, the Debtor argues that she would still be entitled to rescind the transaction on the basis

of the Defendant's fraudulent and unconscionable conduct.  Addressing the unconscionability claim,

the Debtor argues it is factually supported, as the Complaint totals eleven pages and contains sixty-

three paragraphs, which the Debtor has verified.

## IV. <u>DISCUSSION</u>

### A. <u>The Motion to Dismiss Standard</u>

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made

applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b), I will not

dismiss the plaintiff's complaint if there are "enough facts to state a claim to relief that is plausible

on its face," or if the plaintiff has demonstrated a "reasonably founded hope that the [discovery]

process will reveal relevant evidence" to support the plaintiff's claims.[13]

A statute of limitations defense may be considered on a Rule 12(b)(6) motion, but only to the

extent that the complaint, "matters fairy incorporated within it, and matters susceptible to judicial

notice," including "matters of public record,"show beyond doubt that the statute has run.[14]  Thus, to

---

[13] *Holland v. EMC Mortgage Corp. (In re Holland)*, 374 B.R. 409, 421 (Bankr. D. Mass. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, - - - U.S. - - - -, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[14] *Rodi v. Southern New England School of Law*, 389 F.3d 5, 17 (1st Cir. 2004) (*citing LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998)); *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15-16 (B.A.P. 1st Cir. 2003).

the extent that the public court documents from the Debtor's prior bankruptcy case are relevant, they

may be appropriately considered.[15]

B. Negligence, Fraud, and Emotional Distress

Massachusetts law provides that tort actions, which include the Debtor's claims for

negligence, fraud, and emotional distress,[16] "shall be commenced only within three years next after

the cause of action accrues."[17]  A cause of action accrues when the harm becomes known, or in the

exercise of reasonable diligence, should have become known, to the injured party.[18]  The injured

party "need not have notice of 'every fact which must eventually be proved in support of the

claim. . . . Rather, notice is simply knowledge that an injury has occurred.'"[19]

In the instant case, not even a liberally extended accrual date would protect the Debtor's tort

claims from being time-barred under the statute.  Assuming, *arguendo*, that the causes of action did

not begin to accrue prior to closing, the Debtor's tort claims accrued, at the latest, shortly after the

February 20, 2004 closing date, as the Debtor demonstrated sufficient knowledge of the claims by

then.  In the Complaint, the Debtor alleges that she received a check for less than half of what she

was told she would receive approximately ten days after the closing, and received closing documents

with materially different terms a week thereafter.  Over the following several months, the Debtor

---

[15] *See* Fed.R.Evid. 201; *Rodi v. Southern New England School of Law*, 389 F.3d at 18-19 (citations omitted).

[16] The Debtor did not specify whether her action for emotional distress is based on an intentional or negligence theory, but such distinction is irrelevant, as both are "tort actions" under the statute.  *See Phinney v. Morgan*, 654 N.E.2d 77 (Mass. 1995).

[17] Mass. Gen. Laws ch. 260, § 2A.

[18] *Collins v. Nuzzo*, 244 F.3d 246, 253 (1st Cir. 2001) (citations omitted).

[19] *Id.*

made numerous calls to the Defendant in an effort to resolve the problems.  Despite her awareness,

the Debtor waited over four years to file the complaint, well past the statute of limitations set forth

in  Mass. Gen. Laws ch. 260, § 2A.

The Debtor contends that the statute of limitations applicable to her tort causes of action

should be tolled under equitable principles.  While "equitable tolling functions to stop the statute of

limitations from running where the claim's accrual date has already passed,"[20] it is used "only

sparingly,"[21] in order "to prevent inequity."[22]   Therefore, a party seeking equitable tolling must

demonstrate "exceptional circumstances."[23]   Such circumstances exist "where the claimant has

actively pursued his judicial remedies by filing a defective pleading during the statutory period, or

where the complainant has been induced or tricked by his adversary's misconduct into allowing the

filing deadline to pass."[24]   No exceptional circumstances meriting equitable tolling exist here.

Instead, the Debtor simply failed to file her tort claims within the applicable time period. As a

foundational principle, "[e]quitable tolling is unavailable where a party fails to exercise reasonable

diligence."[25]   The Debtor suggests, however, that the dismissal of her previous bankruptcy case

justifies equitable tolling.  To the contrary, a dismissal without prejudice does not toll a statute of

---

[20] *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994).

[21] *Irwin v. Depart. of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

[22] *Chao v. Russell P. LeFrois Builder, Inc.*, 291 F.3d 219, 223 (2d Cir. 2002) (internal citation and quotation marks omitted).

[23] *Neverson v. Farquharson*, 366 F.3d 32, 40 (1st Cir. 2004).

[24] *Irwin v. Dept. of Veterans Affairs*, 498 U.S. at 90.

[25] *Benitez-Pons v. Com. of Puerto Rico*, 136 F.3d 54, 61 (1st Cir. 1998).

limitation.[26]  Further, the Debtor's legal inexperience does not excuse the delay in filing her tort

actions.  Neither lack of legal knowledge nor legal representation are factors warranting equitable

tolling.[27]  Thus, I see no equitable reason to resurrect the Debtor's time-barred tort claims and will

enter an order dismissing Counts I, II, and VII.  As the Debtor's fraud claim shall be dismissed on

statute of limitations grounds, I need not consider whether it has been pled with sufficient

particularity.

C. TILA and CCCDA

"Both TILA and CCCDA were enacted 'to assure a meaningful disclosure of credit terms so

that the consumer will be able to compare more readily the various credit terms available to him and

avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit

billing and credit card practices.'"[28]  "Both acts provide that a borrower whose loan is secured by his

principal dwelling and who has been denied the requisite disclosures may rescind the loan

transaction," or seek damages.[29]  TILA, however, is not the law in Massachusetts, as the Board of

Governors of the Federal Reserve System exempted credit transactions within Massachusetts subject

to the CCCDA from chapters two and four of TILA.[30]  Chapter two of TILA includes sections 1631

through 1646.  Regulation Z, however, expressly provides that an exemption shall not extend to the

---

[26] *Chico-Velez v. Roche Prod., Inc.*, 139 F.3d 56, 59 (1st Cir. 1998).

[27] *McLester v. Hopper*, 67 F.Supp.2d 1308, 1311-1312 (M.D.Ala. 1999).

[28] *In re Fidler*, 226 B.R. at 736 (*quoting Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998)).

[29] *Id.  See* 15 U.S.C. §§ 1635, 1640; Mass. Gen. Laws ch. 140D, §§ 10, 32.

[30] *See* 48 Fed.Reg. 14882, 14890 (1983); *In re Fidler*, 226 B.R. at 736; *Desrosiers v. Transamerica Fin. Corp. (In re Desrosiers)*, 212 B.R. 716, 722 n. 6 (Bankr.D.Mass.1997).

civil liability provisions of 15 U.S.C. §§ 1640 and 1641.[31]   Nonetheless, the CCCDA is modeled

after TILA and the provisions of the two statutes are substantially the same.[32]  The primary difference

between the two is that under TILA, a borrower has three years to rescind and one year to institute

an action for damages, while the statute of limitations under the CCCDA is four years for either

remedy.

Here, the Debtor filed the Complaint in this adversary proceeding on March 9, 2008, more

than four years after the February 20, 2004 closing date.  Therefore, the Debtor's rescission and

damages claims are untimely under the CCCDA and TILA.  Under Massachusetts law, however,

certain claims may be brought despite their untimeliness.  Mass. Gen. Laws ch. 260, § 32 provides:

> If an action *duly commenced* within the time limited in this chapter is *dismissed* for
> insufficient service of process by reason of an unavoidable accident or of a default or neglect
> of the officer to whom such process is committed or is dismissed because of the death of a
> party or for *any matter of form*, or if, after judgment for the plaintiff, the judgment of any
> court is vacated or reversed, the plaintiff or any person claiming under him may commence
> a new action for the *same cause* within *one year* after the dismissal or other determination
> of the original action, or after the reversal of the judgment; and if the cause of action by law
> survives the executor or administrator or the heir or devisee of the plaintiff may commence
> such new action within said year.[33]

"[I]t is settled that a dismissal for want of jurisdiction is for a 'matter of form' within the meaning

of the statute."[34]  Because the Debtor's CCCDA claims were filed timely on August 22, 2007 in the

Debtor's prior adversary proceeding, she had one year under Mass. Gen. Laws ch. 260, § 32 to

recommence her action with respect to these claims.  As the prior adversary proceeding was

---

[31] 12 C.F.R. § 226.29(b)(1).

[32] *In re Desrosiers*, 212 B.R. at 722.

[33] Mass. Gen. Laws ch. 260, § 32 (emphases added).

[34] *Boutiette v. Dickinson*, 768 N.E.2d 562, 564 (Mass. 2002).

dismissed for lack of jurisdiction on January 23, 2008, the present adversary proceeding was recommenced timely.

Despite its timeliness, the Defendant maintains that the Debtor's CCCDA claim should still be dismissed under *Palmer v. Champion Mortgage*[35] and *Carye v. Long Beach Mortgage Company.*[36] These cases are inapposite, however, because in both cases it was undisputed that the plaintiffs received the material disclosures required under TILA, including notice of their three-day rescission right. Here, in contrast, while the Debtor admits to receiving closing documents, whether she received the required disclosures is neither clear nor undisputed. At this stage in the proceeding I am not charged with weighing the facts and need only determine whether the Debtor has set forth facts sufficient to make a CCCDA claim plausible. As I find that she has, the Defendant's Motion to Dismiss Count III shall be denied.

D. Borrower's Interest

The Masschusetts borrower's interest statute provides in relevant part:

(a) A lender shall not knowingly make a home loan if the home loan pays off all or part of an existing home loan that was consummated within the prior 60 months or other debt of the borrower, unless the refinancing is in the borrower's interest.[37]

This statute did not take effect until November 11, 2004. As the Debtor's loan closed on February 20, 2004, she is not entitled to relief under this statute. Therefore, I will enter an order dismissing Count IV.

---

[35] *Palmer v. Champion Mortgage*, 465 F.3d 24 (1st Cir. 2006).

[36] *Carye v. Long Beach Mortgage Co.*, 470 F. Supp.2d 3 (D. Mass. 2007).

[37] Mass. Gen. Laws ch. 183, § 28C

E. Unconscionability

In Massachusetts, "[t]o prove that the terms of a contract are unsconscionable, a plaintiff

must show both substantive unsconscionability (that the terms are oppressive to one party) and

procedural unconscionability (that the circumstances surrounding the formation of the contract show

that the aggrieved party had no meaningful choice and was subject to unfair surprise.)."[38]  The

Debtor does not allege that she was confronted with oppressive terms, but rather that the terms of

the contract were different from what she had expected.  She states that she reviewed all of the

papers at closing with the assistance of the Defendant's attorney, who explained every page she

signed, and that "everything appeared to be in order."[39]  Though she wanted to remove her ex-

husband's name from the mortgage, she was not facing foreclosure at that time, nor was she in a

position such that she was unable to walk away from the closing.  The Debtor's limited education,

while supportive of a finding of unconscionability, is not conclusive of an unconscionable contract.

There being no further unconscionable conduct alleged, I will enter an order dismissing Count V.

F. Restitution

The Debtor seeks restitution as a result of alleged unjust enrichment, stemming from loan

costs that were excessive in relation to market standards.  To maintain an action for unjust

enrichment under Massachusetts law, a plaintiff must show "(1) an enrichment; (2) an

impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of

---

[38] *Sullivan v. Decision One Mortgage (In re Sullivan),* 346 B.R. 4, 26 (Bankr. D. Mass. 2006) (*quoting Storie v. Household Intern., Inc.,* No. 03-40268-FDS, 2005 WL 3728718 at *9 (D. Mass. Sept. 22, 2005) (citations omitted)).

[39] Complaint at ¶ 27.

justification and (5) the absence of a remedy provided by law."[40]  When there is an adequate remedy

at law, an action for unjust enrichment is unavailable.[41]  The Debtor's action under CCCDA, if

proved, will provide sufficient relief to the Debtor, so she is not entitled to a further remedy in

equity.  Therefore, I will enter an order dismissing Count VI.

## V. CONCLUSION

In light of the foregoing, I will enter an order granting in part and denying in part the Motion

to Dismiss and dismissing Counts I, II, IV, V, VI, and VII of the Complaint.


_____
William Hillman
United States Bankruptcy Judge

Dated: November 6, 2008

---

[40] *Braunstein v. Panagiotou and Gedco, LLC, (In re McCabe Group, P.C.)*, 345 B.R. 1, 9 (Bankr. D. Mass. 2006) (citations omitted).

[41] *Id.*