**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: <br> DONNA M. DIMARE, <br>          DEBTOR. | Chapter 13 <br> Case No. 08-10598-WCH |
| DONNA M. DIMARE, <br>          PLAINTIFF, <br> v. <br> AMERIQUEST MORTGAGE COMPANY <br> AND OPTION ONE MORTGAGE CORP., <br>          DEFENDANTS. | Adversary Proceeding <br> No. 08-1046 |

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matters before the Court are Ameriquest Mortgage Company's ("Ameriquest's") Motion for Summary Judgment (the "Motion for Summary Judgment") and Donna M. DiMare's ("DiMare's") Opposition thereto (the "Opposition"), Ameriquest's motion to strike the affidavit of Barbara Santiano, DiMare's motion to strike the affidavit of Gregory Blase and the opposition thereto, and DiMare's motion to strike the affidavit of Devi Vijjeswarapu and the opposition thereto (collectively, the "Motions to Strike"). Through the Motion for Summary Judgment, Ameriquest seeks summary judgment on DiMare's claim that it violated the Truth in Lending Act ("TILA")[1] and Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"),[2]

---

[1] 15 U.S.C. § 1601 *et seq.*

[2] Mass. Gen. Laws ch. 140D, § 1 *et seq.*

contending that DiMare released Ameriquest from liability from all past and future claims, or alternatively, that they satisfied the requirements of the TILA and the MCCCDA. For the reasons set forth below, I will enter an order granting summary judgment and finding the Motions to Strike moot.

## II. BACKGROUND

DiMare resides at 19 Alcine Lane, Burlington, Massachusetts (the "Property").[3] In 2001, DiMare and her husband divorced.[4] Under the terms of the divorce, DiMare was awarded full ownership of the Property.[5] At the time of the divorce, the Property was encumbered by a mortgage that DiMare and her ex-husband had obtained from Washington Mutual Bank ("WaMu").[6]

Following the divorce, DiMare approached WaMu to obtain information on how to remove her ex-husband's name from the mortgage.[7] To achieve this end, DiMare was told she would have to refinance the mortgage.[8]

On or around February 2004, DiMare entered into discussions with Ameriquest regarding the refinancing of the WaMu loan (the "Ameriquest Loan").[9] The parties agreed on terms and closed on the Ameriquest Loan on February 20, 2004 (the

---

[3] Verified Adversary Complaint, Docket No 1, (the "Complaint") at I ¶ 2.

[4] *Id.* at IV. ¶ 15.

[5] *Id.*

[6] *Id.*

[7] *Id.* at ¶ 17.

[8] *Id.*

[9] *Id.* at ¶¶ 19-20.

2

"Closing").[10] At the Closing, DiMare executed a note and granted a mortgage in favor of Ameriquest.[11] The events surrounding the Closing and multiple terms of the Ameriquest Loan and loan documents are the basis for the current litigation.

While Ameriquest asserts that they sent DiMare pre-closing disclosures dated "February 17, 2004," DiMare contends that she did not receive any pre-closing disclosures from Ameriquest and that any post-closing documents she received from them were dated "February 20, 2004."[12]

Within two weeks after the Closing (i.e., by March 5, 2004 at the latest), DiMare received copies of loan documents from Ameriquest in the mail.[13] Included among these documents were copies of DiMare's Adjustable Rate Note, Mortgage, Adjustable Rate Rider, and a Final Truth-in-Lending Disclosure.[14]

Also included in the packet of documents were five Notices of Right to Cancel ("NORCs"). According to the Statement of Undisputed Material Facts in Support of Ameriquest Mortgage Company's Motion for Summary Judgment, each NORC states, in relevant part, that:

> You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs LAST:
> (1) The date of the transaction, which is _____ ; or

---

[10] *Id.* at ¶ 25.

[11] Statement of Undisputed Material Facts ("SUMF"), Docket No. 60, at ¶ 6.

[12] DiMare's Opposition to Ameriquest's Motion for Summary Judgment, Docket No. 83 (the "Opposition") at 3.

[13] SUMF at ¶ 8.

[14] *Id.*

>    (2) The date you receive your Truth in Lending disclosures; or
>    (3) The date you received this notice of your right to cancel.
>
>    ***
>
>    HOW TO CANCEL
>    If you decide to cancel this transaction, you may do so by notifying us in writing....
>    You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.
>    If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of _____ (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.[15]

The boxes on two of the NORCs were filled in with "2/20/04" in the box for the transaction date and "2/24/04" in the box for the cancellation date. The boxes on the other three NORCs are left blank.[16] Each of the five NORCs identifies, among other things: (1) the Closing date (February 20, 2004) printed on the top corner; (2) DiMare's name; (3) the Property's address; and (4) Ameriquest as the lender.[17] Though DiMare claims that she did not read the NORCs when she received them, she testified in her deposition that if she had read them, she would have understood them to mean that she

---

[15] *Id.* at ¶ 9. In the Opposition at 3, DiMare contends that on the NORCs she received, the word "last" is not in capital letters on the NORCs that DiMare received and that the word "receive" is in the past tense. She does not otherwise dispute the accuracy of the language reproduced in the SUMF.

[16] *Id.* at ¶ 10.

[17] *Id.* at ¶ 12.

4

had three business days to cancel her mortgage loan.[18] DiMare never sent a notice requesting to cancel or rescind the Ameriquest Loan.[19]

After three months of timely payments, DiMare defaulted on the Ameriquest Loan.[20] In order to become current on the loan and to cure her defaults, DiMare entered into discussions with Ameriquest regarding a forbearance agreement.[21] Pursuant to these discussions, Ameriquest claims that it sent DiMare a proposed forbearance agreement (the "Forbearance Agreement") that provided for the ratification of terms of the [Ameriquest Loan] and released Ameriquest from:

> any and all past, present and future claims for damages or losses to borrowers' property or person (whether these damages or losses are known or unknown, foreseen or unforeseen, or patent or latent) including without limitation, tort claims, demands, actions and causes of Action of any nature, whatsoever arising out of or relating to this Forbearance Agreement, the Loan Agreement or any of the transactions related thereto or hereto.[22]

In contrast, DiMare claims that she only received a signature page (the "Signature Page") and not a full copy of the Forbearance Agreement including the release clause (the "Release").[23] She contends that she signed the Signature Page and that her daughter immediately faxed it back to Ameriquest because she feared that her home would be

---

[18] *Id.* at ¶ 20 and Opposition at 3.

[19] *Id.* at ¶ 14.

[20] *Id.* at ¶ 15.

[21] *Id.* at ¶ 16.

[22] *Id.* at ¶ 18.

[23] Opposition at 3.

foreclosed if she did not.[24] DiMare asserts that the first time she saw the entire Forbearance Agreement, including the Release, was immediately prior to her deposition, almost four years after Ameriquest claims that she signed and returned the entire Forbearance Agreement.[25]

In August 2005, DiMare entered into a refinancing transaction with Option One Mortgage Corporation ("Option One").[26] As a result of this transaction, the Ameriquest Loan was paid off in full.[27] Shortly after the closing with Option One, DiMare began having difficulties making her monthly payments.[28] Unable to reach a compromise, Option One initiated a foreclosure proceeding.[29]

On December 15, 2006, DiMare filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. During the pendency of that case, DiMare commenced an adversary proceeding against Ameriquest and Option One (collectively the "Defendants"). In her complaint, DiMare asserted that the Defendants were liable to her for negligence, fraud, emotional distress, breach of contract, and violations of the TILA and the MCCCDA. Prior to a decision on the matter, DiMare's bankruptcy case was

---

[24] *Id.* at 3-4.

[25] *Id.* at 3. I note that Ameriquest failed to submit a copy of the Forbearance Agreement with an attached signed signature page. Instead, Ameriquest was only able to submit separate copies of the Signature Page, with DiMare's signature, and the Forbearance Agreement with an unsigned signature page.

[26] SUMF at ¶ 23.

[27] *Id.*

[28] Complaint at IV. ¶ 50.

[29] *Id.* at ¶ 51.

6

dismissed on January 2, 2008 for failure to make plan payments, resulting in the dismissal of the adversary proceeding on January 23, 2008, for lack of jurisdiction.

On January 29, 2008, DiMare filed a second bankruptcy petition and subsequently commenced an adversary proceeding against Ameriquest and Option One on March 9, 2008.[30] Through her seven-count Verified Adversary Complaint (the "Complaint") DiMare sought recovery from Ameriquest and Option One for: Negligence, Promissory Fraud, Violations of TILA and MCCCDA, Borrower's Interest, Unconscionability, Restitution, and Emotional Distress.[31] The substance of DiMare's TILA and MCCCDA claims were that the Defendants allegedly failed to provide her with certain pre-closing disclosures and the required number of accurately completed NORCs.[32] DiMare's desired relief included rescission of the Ameriquest Loan and compensatory, actual, punitive, and statutory damages under TILA and MCCCDA.[33] Ameriquest filed a Motion to Dismiss on June 11, 2008 (the "Motion to Dismiss").[34] DiMare filed an Objection on July 16, 2008.[35] I held a hearing on the Motion to Dismiss on September 11, 2008, and at its conclusion, took the matter under advisement.[36] On November 6,

---

[30] Complaint at I. ¶ 1.

[31] *See* Complaint.

[32] *Id.*

[33] *Id.* at VI. ¶ 82.

[34] Docket No. 16.

[35] Docket No. 22.

[36] Docket No. 31.

2008, I issued a Memorandum of Decision dismissing all of DiMare's claims except for those under TILA and MCCCDA.[37]

On August 14, 2009, Ameriquest filed the Motion for Summary Judgment asserting that summary judgment on the TILA and MCCCDA claim is appropriate because: (1) DiMare released all claims against Ameriquest by entering into the Forbearance Agreement; (2) DiMare is not entitled to rescission under MCCCDA because she received the five NORCs within two weeks after the Closing and the notice on said forms was adequate; and (3) DiMare is not entitled to statutory damages under the MCCCDA because at the time of the Ameriquest Loan, the MCCCDA did not require Ameriquest to mail pre-closing disclosures in connection with the Ameriquest Loan.[38] In support of the Motion for Summary Judgment, Ameriquest filed the Declaration of Gregory N. Blase (the "Blase Declaration"), counsel of record for Ameriquest ("Blase").[39] Various documents including five copies of the NORC, two with the transaction date and the cancellation date filled in and three left blank, a copy of the Forbearance Agreement, and the Signature Page were attached to the Blase Declaration through which Blase attested to their truth and accuracy.[40]

On September 1, 2009, DiMare filed a Motion to Amend the Complaint (the "Motion to Amend").[41] On September 11, 2009, Ameriquest filed an opposition to the

---

[37] Docket No. 34.

[38] Docket Nos. 58 & 59.

[39] Docket No. 61.

[40] *Id.*

[41] Docket No. 66.

8

Motion to Amend.[42] As grounds for said opposition, Ameriquest claimed that through the Motion to Amend DiMare was seeking to rehash old, previously-dismissed, time-barred claims of fraud and unconscionability and to assert newly-minted allegations that Ameriquest did not provide DiMare with certain documents-including the complete Forbearance Agreement.[43]

On September 22, 2009, DiMare filed the Opposition which is premised in part on the allegations and causes of action raised for the first time in the amended complaint.[44] In support of the Opposition, DiMare filed the Affidavit of Barbara Santiano (the "Santiano Affidavit"), counsel of record for DiMare ("Santiano"), in which she describes conversations she had with employees of Federal Express and UPS Express Critical for the purpose of disputing that DiMare received a complete copy of the Forbearance Agreement.[45] On October 23, 2009, Ameriquest filed a Motion to Strike the Santiano Affidavit asserting that it violates the Massachusetts Rules of Professional Conduct and that it contains inadmissible hearsay.[46] DiMare did not oppose said motion.

On October 27, 2009 Ameriquest replied to the Opposition (the "Reply").[47] In the Reply, Ameriquest argued that in the Opposition, DiMare raised new or previously dismissed grounds for holding Ameriquest liable to DiMare, namely that the Ameriquest

---

[42] Docket No. 70.

[43] *Id.* at 1-3.

[44] Docket No. 83.

[45] Docket No. 83 Exhibit 10.

[46] Docket No. 86.

[47] Docket No. 92.

Loan and process leading up to it were unconscionable or otherwise unfair or deceptive, that Ameriquest entered into the Refinancing Agreement in bad faith and unfair dealing, and fraud.[48] In connection with the Reply, Ameriquest filed the Affidavit of Devi Vijjeswarapu (the "Vijjeswarapu Affidavit"), a former employee of Ameriquest ("Vijjeswarapu"), containing an analysis of the circumstances surrounding the Forbearance Agreement and its contents.[49]

On the same day, DiMare filed a motion to strike the Vijjeswarapu Affidavit contending that Vijjeswarapu was not previously disclosed as a person with knowledge of the matter, barring any investigation as to his claims.[50] Simultaneously, DiMare filed a Motion to Strike the Blase Declaration, contending the Blase Declaration violates the Massachusetts Rules of Professional Conduct, does not satisfy the requirements of the Federal Rules of Civil Procedure, and is inadmissible hearsay.[51]

On October 30, 2009, Ameriquest filed an opposition to the Motion to Strike the Blase Declaration.[52] On November 5, 2009, Ameriquest filed an opposition to the motion to strike the Vijjeswarapu Affidavit, asserting that the Vijjeswarapu Affidavit was filed in response to DiMare's unconscionability arguments raised in the Opposition.[53] I

---

[48] *Id.*

[49] Docket No. 93.

[50] Docket No. 97.

[51] Docket No. 96.

[52] Docket No. 112.

[53] Docket No. 116.

held a hearing on all matters on October 28, 2009, and at its conclusion, I denied the Motion to Amend and took the remaining matters under advisement.[54]

### III. POSITION OF THE PARTIES

*Ameriquest*

In seeking summary judgment, Ameriquest argues that DiMare released all claims against Ameriquest in July 2004 when she entered into the Forbearance Agreement that contained, among other things, a ratification of the terms of the Ameriquest Loan and a comprehensive release. Alternatively, Ameriquest contends that DiMare is not entitled to rescission under the MCCCDA because she received five NORCs in the mail within two weeks after the Closing which provided adequate notice of her right of rescission. Furthermore, Ameriquest asserts that DiMare is not entitled to statutory damages under the MCCCDA because at the time of the Ameriquest Loan closed, Ameriquest was not required to mail DiMare pre-closing disclosures.

*DiMare*

In opposition, DiMare argues that she is not bound by the Release contained in the Forbearance Agreement because the Release was not part of the Signature Page she signed. Moreover, she asserts that she may rescind the Ameriquest Loan because Ameriquest failed to properly and conspicuously disclose her right of rescission. Finally, she argues that she is entitled to damages under the MCCCDA because Ameriquest failed to provide her with required pre-Closing disclosures.

---

[54] Docket No. 102. After the hearing, Ameriquest filed Supplemental Authority in Support of the Motion for Summary Judgment (Docket No. 118), DiMare filed Supplemental Authority in support of the Opposition (Docket No. 120), and Ameriquest filed a response to DiMare's Supplemental Authority (Docket No. 124).

## IV. DISCUSSION

A. *The Summary Judgment Standard*

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[55] The burden of proof is upon the moving party in the first instance.[56] To defeat the motion, the opposing party must produce substantial evidence of a genuine dispute as to a material fact.[57] A material fact is one that has the "potential to affect the outcome of the suit under applicable law."[58]

In responding to a motion for summary judgment, the opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial."[59] Further, "if the opposing party does not so respond, summary judgment should, *if appropriate*, be entered against that party."[60] The United States Court of Appeals for the First Circuit has explained this provision to mean that the absence of a material factual dispute is a "condition necessary," but not a "condition sufficient" to

---

[55] Fed. R. Civ. P. 56(c), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

[56] *Steel Hector & Davis v. Wang Labs., Inc.* (*In re Wang Labs., Inc.*), 155 B.R. 289, 290 (Bankr. D. Mass. 1993).

[57] *Id.*

[58] *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

[59] Fed. R. Civ. P. 56(e)(2).

[60] *Id.* (emphasis added).

summary judgment.[61]  The moving party, therefore, must show that it is entitled to judgment as a matter of law.[62]

      B. *The Forbearance Agreement and the Motions to Strike the Vijjeswarapu and Santiano Affidavits*

Ameriquest contends that the Release exculpates them.  DiMare claims that prior to her deposition the only page of the Forbearance Agreement that she saw was the Signature Page.  In support of the Motion for Summary Judgment, Ameriquest filed both a blank signature page annexed to the Forbearance Agreement and, separately, the Signature Page.  The Signature Page is substantively identical to the signature page appended to the Forbearance Agreement except for the presence of DiMare's signature on the Signature Page.  The Release is not contained in the Signature Page.

Because Ameriquest is unable to produce a complete signed copy of the Forbearance Agreement and DiMare contends she never received it, the enforceability of the Forbearance Agreement is subject to a genuine dispute.  Therefore, Ameriquest has not shown that it is entitled to judgment as matter of law on this basis.

Because the sole purpose of both the Vijjeswarapu Affidavit and the Santiano Affidavit was to address the effectiveness of the Forbearance Agreement, which for the reasons stated above I will not consider on the merits at this time, both the Motion to Strike the Vijjeswarapu Affidavit and the Motion to Strike the Santiano Affidavit are moot.

---

[61] *In re Varrasso,* 37 F.3d 760, 764 (1st Cir. 1994).

[62] *Id.*

C. *TILA & MCCCDA*

"Both TILA and [MCCCDA] were enacted 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'"[63] "Both acts provide that a borrower whose loan is secured by his principal dwelling and who has been denied the requisite disclosures may rescind the loan transaction," or seek damages.[64] "In Massachusetts, however, credit transactions subject to [MCCCDA] are exempt from many of the provisions of TILA."[65] "Nonetheless, the MCCCDA is modeled after TILA and the provisions of the two statutes are substantially the same."[66] "It is, therefore, common ground that the [M]CCCDA should be construed in accordance with the TILA."[67]

---

[63] *Fidler v. Cent. Coop Bank, (In re Fidler)*, 226 B.R. 734, 736 (Bankr. D. Mass. 1998) (*quoting Beach v .Ocwn Federal Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998)).

[64] *Id.*; *See* 15 U.S.C. §§ 1635, 1640; Mass. Gen. Laws ch. 140D, §§ 10, 32.

[65] *Dvittorio v. HSBC Bank USA, N.A.*, (*In re Divittorio)*, No. 09-1089, 2009 WL 2246138, *8 n. 66 (Bankr. D. Mass. July 23, 2009) ("The Federal Reserve Board has exempted credit transactions within Massachusetts subject to the [MCCCDA] from chapters two and four of TILA.  12 C.F.R. Pt. 226, Supp. I, 12 C.F.R. § 226.29(a) ¶ 4; *see Laudani v. Tribecca Lending Corp. (In re Laudani)*, 401 B.R. 9, 25 n. 13 (Bankr. D.Mass.2009).  Chapter two of TILA includes sections 1631 through 1646.  The displacement of federal law is not absolute, however, and it is well established that borrowers retain at least the ability to file suits pursuant to 15 U.S.C. § 1640.  [*Belini v. Washington Mut. Bank, FA*, 412 F.3d [17] at 20 [(1st.Cir. 2005)]").

[66] *Divittorio*, 2009 WL 2246138 at *5.  *See* 48 Fed.Reg. 14882, 14890 (1983); *Fidler*, 226 B.R. at 736; *Desrosiers v. Transamerica Fin. Corp. (In re Desrosiers)*, 212 B.R. 716, 722 fn. 6 (Bankr. D. Mass. 1997).

[67] *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 422 (1st Cir. 2007).

1. Adequate Notice of Right of Rescission and the Motion to Strike the Blase Declaration

Like TILA, the MCCCDA provides that the period for canceling a residential loan transaction ends three business days after the latest of three events: the closing; the date the consumer receives required Truth-in-Lending disclosures; or the date the consumer receives proper notice of the right to cancel.[68] To comply with the MCCCDA, the "creditor. . .must clearly disclose this rescission right to the debtor."[69] "The Board has created a model form (the "Model Form"); a creditor must provide [the debtor] either the model form or substantially 'similar notice.'"[70] "The use of the model form insulates the creditor from most insufficient disclosure claims."[71] "Regulation Z says what the notice of the right to cancel must clearly and conspicuously disclose; pertinently, the regulation requires that the notice include '[t]he date the rescission period expires.'"[72] "Courts must evaluate the adequacy of TILA disclosures from the vantage point of a hypothetical average consumer - a consumer who is neither particularly sophisticated nor particularly

---

[68] Mass. Gen. Laws ch. 140D, § 10(a); 209 C.M.R. § 32.23(1)(c); 12 C.F.R. § 226.23(a)(3); 15 U.S.C. § 1635(a).

[69] *Palmer v. Champion Mortgage*, 465 F.3d 24, 27 (1st Cir. 2006).

[70] *Melfi v. WMC Mortgage Corp.*, 568 F.3d 309, 311 (1st Cir. 2009); 12 C.F.R. § 226.23(b)(2). *See also* the model form in 12 C.F.R. Pt. 226 App. H-8, which in relevant part provides that the borrower has "three business days after the latest of the following events: (1) the date of this new transaction, which is _____; or (2) the date you received your Truth-in-Lending disclosures; or (3) the date you received this notice of your right to cancel."

[71] *Melfi*, 568 F.3d at 311; 15 U.S.C. § 1604(b).

[72] *Melfi*, 568 F.3d at 311 (*quoting* 12 C.F.R. § 226.23(b)(1)(v)).

15

dense."[73] "[T]echnical deficiencies do not matter if the borrower receives a notice that effectively gives him notice as to the final date for rescission and has the three full days to act."[74]

According to Ameriquest's SUMF, DiMare received five NORCs after the Closing, two with the transaction date and cancellation date (the "Date Certain to Rescind") filled in, though expired by the time she received it, and three that were blank.[75] Although the NORCs are attached to the Blase Declaration, Ameriquest also reproduced the text of the NORCs in the SUMF, demonstrating that they are substantively identical to the Model Form.[76] Aside from two non-material discrepancies that appear to be scrivener's errors, DiMare does not dispute the accuracy of the text in the SUMF.[77] Pursuant to Local Rule 56.1 of the United States District Court for the District of Massachusetts, material facts set forth in the moving party's statement of undisputed material facts are deemed admitted for purposes of summary judgment if not controverted by an opposing statement.[78] Therefore, to the extent that the DiMare seeks to strike the Blase Declaration and, in turn, the exhibits thereto, I find that she has already

---

[73] *Palmer*, 465 F.3d at 28.

[74] *Melfi*, 568 F.3d at 311.

[75] SUMF at ¶¶ 9-10.

[76] *Id.* at ¶ 9.

[77] *See* Opposition at 3. *See also* SUMF at ¶ 8.

[78] L.R., D. Mass. 56.1, adopted and made applicable to proceedings in the Bankruptcy Court by Massachusetts Local Bankruptcy Rule 7056-1.

16

admitted the content of the NORCs, rendering her motion to strike them moot.[79] Even if that were not the case, however, I would deny the motion to strike with respect to the NORCs because they satisfy the requirements of Fed. R. Civ. P. 56(e) as self authenticating documents related to commercial paper.[80]

In *Palmer v. Champion Mortgage*, the First Circuit held that a NORC, which was substantively identical to the Model Form, provided clear and conspicuous notice of the borrower's right to cancel even though the Date Certain to Rescind had expired by the time the borrower received the NORC.[81] The First Circuit reasoned that the NORC provided gave the average consumer reasonable notice that the deadline would be the latest of three alternative deadlines, namely, the Date Certain to Rescind, the date the borrower received the Truth-in-Lending disclosures, or the date the borrower received notice of her right to cancel.[82] The First Circuit further stated that they "fail to see how any reasonably alert person- that is, the average consumer- reading the [NORC] would be drawn to the [Date Certain to Rescind] without also grasping the twice-repeated alternative deadlines."[83]

Building on *Palmer*, in *Melfi v. WMC Mortgage Corp.*, the First Circuit held that a NORC that is substantively identical to the Model Form but without the transaction date

---

[79] Because the Debtor's allegations are primarily based on the adequacy of the notice of her right to cancel, the remainder of the documents attached to the Blase Declaration are unnecessary to my determination, rendering the balance of the motion to strike moot.

[80] *See* Fed. R. Evid. 902(9).

[81] *Palmer*, 465 F.3d at 27-29.

[82] *Id.* at 29.

[83] *Id.*

17

and Date Certain to Rescind completed still provides adequate notice of the borrower's right to rescind.[84] The First Circuit reasoned that "[t]he date that [the borrower] closed on the loan can hardly have been unknown to him."[85] Moreover, it concluded that "there is no evidence in TILA or any Board regulation that either Congress or the Board intended to render the form a nullity because of an uncompleted blank in the form or similar flaw."[86]

I see no significant difference between the notice provided in the current case and those provided in *Palmer* and *Melfi*. The NORCs DiMare received were substantively identical to the Model Form created by the Board.[87] The First Circuit has made clear that NORCs which are substantively identical to the Model Form that either contain an expired Date Certain to Rescind or omit it entirely do not fail to give clear and conspicuous notice of the right to cancel because the Model Form contains alternative deadlines. Therefore, DiMare received adequate notice of her right to cancel, entitling Ameriquest to summary judgment under this theory.

2. Statutory Damages under the MCCCDA

Creditors who fail to comply with provisions of the MCCCDA are liable to the debtor for statutory damages.[88] The MCCCDA obliges creditors to provide debtors with

---

[84] *Melfi*, 568 F.3d at 312.

[85] *Id.*

[86] *Id.*

[87] *See* 12 C.F.R. Pt. 226, Appendix H-8.

[88] Mass. Gen. Laws 140D, § 32(a)(2)(a) (Statutory damages are capped at $1,000).

18

pre-closing disclosures.[89]  The pre-closing disclosure requirement, in its 2003 form, which was operative at the time of the refinancing, provides in relevant part that:

> In a *residential mortgage transaction* subject to the Real Estate Settlement Procedures Act (12 USC § 2601 et seq.) the creditor shall make good faith estimates of the disclosures required by 209 CMR § 32.18 before consummation, or shall deliver or place them in the mail not later than three business days after the creditor receives the consumer's written application, whichever is earlier.[90]

The regulation further defines the term "residential mortgage transaction" as:

> a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling *to finance the acquisition or initial construction of that dwelling*.[91]

Under TILA, a refinancing loan is not a residential mortgage transaction.[92]  It is undisputed that the transaction at issue in this case is a refinancing loan, and therefore, Ameriquest was not obliged to provide DiMare with pre-closing disclosures, entitling it to judgment as a matter of law with respect to their liability to DiMare for statutory damages.

---

[89] 209 C.M.R. § 32.19 (2003).

[90] 209 C.M.R. § 32.19(1)(a) (2003) (emphasis added).

[91] 209 C.M.R. § 32.02 (2003) (emphasis added).

[92] *In re Vincent*, 381 B.R. 564, 570, n. 4 (Bankr. D. Mass. 2008).

## V. **CONCLUSION**

In light of the foregoing, I find all of the Motions to Strike moot and will enter an order granting the Motion for Summary Judgment.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: December 22, 2009