UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
DONNA M. DIMARE,                                    Chapter 13
            DEBTOR.                                 Case No. 08-10598-WCH

_____

DONNA M. DIMARE,
            PLAINTIFF,

                                                   Adversary Proceeding
v.                                                 No. 08-1046

AMERIQUEST MORTGAGE COMPANY AND
OPTION ONE MORTGAGE CORPORATION,
            DEFENDANTS.

_____

**MEMORANDUM OF DECISION**

## I. <u>INTRODUCTION</u>

The matter before the Court is the "Plaintiff, Donna DiMare's Motion for Summary

Judgement [sic]" (the "Motion for Summary Judgment") filed by Donna M. DiMare (the

"Debtor"), the "Defendant Option Mortgage Corp.'s Opposition to the Plaintiff's Motion for

Summary Judgment [sic] Cross-Motion for Partial Summary Judgment" (the "Cross-Motion")

filed by the defendant Option One Mortgage Corporation ("Option One"), and the "Plaintiff,

Donna DiMare's Opposition to Defendant Option One Mortgage Corp.'s Cross-Motion for

Summary Judgement [sic]" (the "Opposition") filed by the Debtor.  Through her motion, the

Debtor seeks summary judgment with respect to all seven counts set forth in her Verified

Adversary Complaint (the "Complaint"), while Option One seeks judgment as a matter of law on

all counts but one.[1]  For the reasons set forth below, I will deny the Motion for Summary

Judgment on all counts, grant the Cross-Motion with respect to Counts I, II, IV, V, VI, and VII,

and schedule an evidentiary hearing with respect to Count III.

## II.  PRELIMINARY MATTERS

Before delving into the merits of the pleadings now before me, I must address several

preliminary matters.

First, the Debtor argues that the Cross-Motion is untimely and should be denied on that

basis.  Pursuant to my pre-trial order dated March 17, 2011, the parties were to file dispositive

motions, if any, by July 20, 2011.  According to Massachusetts Electronic Filing Rule ("MEFR")

3(c), where the Court orders that a filing must be completed by a specific date but does not

specify the time, electronic filing must be completed by 4:30 p.m. to be deemed timely. [2]  Here,

the Cross-Motion was filed at 8:22 p.m.  While the Debtor is technically correct, I find that under

the circumstances denial of the Cross-Motion on this basis is unnecessary and inefficient.  There

is no question that the Debtor suffered no prejudice from the marginally late filing.  Moreover, to

the extent that the Cross-Motion contains a timely opposition to the Motion for Summary

Judgment, I must consider it at least on that basis.  In any event, where appropriate, I may grant

summary judgment to a nonmovant so long as the other party had a reasonable opportunity to

respond.[3]  As the Debtor filed the Opposition, she cannot claim prejudice.

---

[1] The Complaint asserts the following counts: Count I - Negligence; Count II - Promissory Fraud; Count III - Violations of the Federal and/or State Truth in Lending Acts; Count IV - Borrower's Interest; Count V - Unconscionability; Count VI - Restitution; Count VII - Emotional Distress.  I further note that  in the Complaint, the Debtor labeled both her unjust enrichment and emotional distress counts as "Count VI."  Therefore, I have relabeled the emotional distress count as "Count VII."

[2] *See* MEFR 3(c), adopted by Massachusetts Local Bankruptcy Rule ("MLBR") 9036-1.

[3] *See* Fed. R. Civ. P. 56(f)(1), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

Second, the parties each filed a concise statement of undisputed material facts of record pursuant to Local Rule 56.1 of the United States District Court for the District of Massachusetts,[4] as well as responses to each other's statements of undisputed material facts.[5]  Having reviewed these statements carefully, it appears that, aside from how some facts are characterized, the parties largely agree as to the facts of this case.  While there are six statements regarding the Debtor's interactions with representatives from Aegis to which Option One claims to be without sufficient information to admit or deny, they are deemed admitted by virtue of Option One's failure to expressly controvert them as required by LR, D. Mass. 56.1.[6]

I note, however, that while the Debtor attached 30 exhibits to the Motion for Summary Judgment, many of which are not self-evident,[7] her statement of undisputed material facts references only 8 of those exhibits.  Many of these documents are nonetheless cited in support of statements made in her memorandum.  This is indicative of a larger problem; namely, that the Debtor's statement of undisputed material facts does not actually contain all the facts necessary to determine the Motion for Summary Judgment in her favor.  Indeed, each section of her memorandum includes a plethora of new facts not previously asserted.

---

[4] LR, D. Mass. 56.1, adopted and made applicable to proceedings in the bankruptcy court by MLBR 7056-1.

[5] *See* Local Rule 7056-1 Statement of Undisputed Material Facts of Record in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Undisputed Facts"), Docket No. 148; Defendant Option One Mortgage Corp.'s Response to Plaintiff's Local Rule 7056-1 Statement of Undisputed Material Facts ("Defendant's Response to Facts"), Docket No. 157; Defendant Option One Mortgage Corp.'s Local Rule 7056-1 Statement of Undisputed Material Facts in Support of Its Cross-Motion for Partial Summary Judgment ("Defendant's Undisputed Facts"), Docket No. 159; Plaintiff, Donna DiMare's Response to Defendant Option One Mortgage Corp.'s Statement of Undisputed Material Facts ("Plaintiff's Response to Facts"), Docket No. 169.

[6] LR, D. Mass. 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.").

[7] Additionally, several exhibits appear to be many separate documents.  For example, Plaintiff's Exhibit 8 includes, among other things, a signed copy of the Note, as well as various pre-closing documents.  Although it is difficult to be certain, several documents also appear to be attached several times as part of different exhibits.  This, of course, is precisely why LR, D. Mass. 56.1 exists.

I am reminded that the United States Court of Appeals for the First Circuit has explained that LR, D. Mass. 56.1 "is intended to prevent parties from shifting to the . . . court the burden of sifting through the inevitable mountain of information generated by discovery in search of relevant material."[8]  "Such rules are designed to function as a means of 'focusing a . . . court's attention on what is - and what is not - genuinely controverted.'"[9]  The Debtor's failure to cite to her own exhibits in her statement of undisputed material facts not only leaves me to "grope unaided for factual needles in a documentary haystack,"[10] but further confuses matters in an already complicated case.  Moreover, by asserting and relying on facts not contained in the statement of undisputed material facts, the Debtor has created an incomplete and incoherent narrative of events to which Option One was not required to respond statement by statement. For this reason alone, the Motion for Summary Judgment should be denied.

This, however, does not resolve the difficulties associated with my review of the Cross-Motion and the Opposition.  The Opposition, in similar fashion to the Motion for Summary Judgment, simply introduces additional factual assertions, albeit with citations to the record, mixed with argument.  Local Rule 56.1 only prevents a nonmovant from disputing the material facts in the movant's statement and does not preclude the nonmovant from offering additional evidence in opposition to summary judgment.[11]  Unfortunately, LR, D. Mass. 56.1 does not set forth any procedure or restrictions on how the nonmovant presents such evidence.  Therefore, to the extent that the Opposition contains properly supported factual assertions that augment the

---

[8] *Rios-Jimenez v. Principi*, 520 F.3d 31, 39 (1st Cir. 2008).

[9] *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007) (*quoting  Calvi v. Knox County*, 470 F.3d 422, 427 (1st Cir. 2006)).

[10] *Id.* at 8.

[11] *See Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11, 15-16 (1st Cir.2004) (construing analogous local rule in District of Puerto Rico).

record, I am left to do the Debtor's homework for her as I must consider them with respect to the Cross-Motion.

For these reasons, my recitation of the facts in this memorandum must be divided into two sections. The first, to be considered with respect to the Motion for Summary Judgment, is taken *only* from the parties competing statements.[12] The second will include, to the extent necessary and appropriate, additional facts set forth in the Opposition to be considered in conjunction with the Cross-Motion.

Lastly, the Debtor appears seek summary judgment on several theories not actually asserted in the Complaint, including breach of the implied covenant of good faith and fair dealing and violations of Mass. Gen. Laws chs. 93A and 183C. It is apodictic that one cannot obtain judgment as a matter of law on a claim was not brought. Therefore, these arguments will not be addressed further.

### III. BACKGROUND

A. Procedural History[13]

The present dispute is the latest iteration of a drawn out battle between the Debtor and her mortgage lenders over their efforts to foreclose her property at 19 Alcine Lane, in Burlington, Massachusetts (the "Property"). On December 15, 2006, the Debtor filed her first Chapter 13 petition.[14] Shortly after Option One filed a motion for relief from the automatic stay, the Debtor

---

[12] *See Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d at 8 (court does not abuse its discretion by enforcing anti-ferreting rules); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need only consider the cited materials . . . ."), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

[13] I take judicial notice of the docket in the adversary proceeding, as well as that of the main case pending before this Court and the Debtor's prior cases. *See Rodi v. Southern New England School of Law*, 389 F.3d 5, 18-19 (1st Cir. 2004) (citations omitted). Unless otherwise stated, all docket references shall be to the above captioned adversary proceeding.

[14] *See In re Donna M. DiMare*, Case No. 06-14772-JNF.

commenced an adversary proceeding against Option One, Ameriquest Mortgage Company

("Ameriquest"), and Aegis Lending Corporation ("Aegis") on August 22, 2007 (the "First

Adversary Proceeding").[15]   The First Adversary Proceeding arose out of two loan refinancing

transactions with respect to the Property: one with Ameriquest in 2004, and the other with

Option One in 2005 where Aegis acted as the mortgage broker.   The Debtor asserted claims for

negligence, fraud, emotional distress, breach of contract, and violations of state and federal truth

in lending statutes.   In October 2007, Option filed an answer to the Debtor's complaint while

Ameriquest filed a motion to dismiss, arguing that the claims were untimely, not factually

supported, and not plead with sufficient particularity.[16]   Judge Feeney held a hearing on the

matter, and subsequently took it under advisement.   Prior to the issuance of a decision, however,

the Debtor's bankruptcy case was dismissed on January 2, 2008, for failure to make plan

payments.   As a result the First Adversary Proceeding was dismissed on January 23, 2008, for

lack of jurisdiction.

On January 29, 2008, the Debtor filed her second Chapter 13 petition.[17]   The present

adversary proceeding followed on March 9, 2008.   The Debtor's Complaint contains identical

factual allegations and arises from the same events as the First Adversary Proceeding.   This time,

however, Aegis was not named as a defendant.   Through the Complaint, the Debtor sought

recovery from Ameriquest and Option One on the following counts: Count I - Negligence; Count

II - Promissory Fraud; Count III - Violations of the Federal and/or State Truth in Lending Acts;

Count IV – Borrower's Interest; Count V - Unconscionability; Count VI - Restitution; Count VII

---

[15] *See DiMare v. Ameriquest Mortg., et al.*, Adv. P. No. 07-1338.

[16] Aegis did not appear to answer or otherwise defend in the First Adversary Proceeding.

[17] *See In re Donna M. DiMare*, Case No. 08-10598-WCH.

- Emotional Distress.  On November 6, 2008, I granted a motion to dismiss filed by Ameriquest, dismissing Counts I, II, IV, V, VI, and VII.[18]  Subsequently, I granted Ameriquest's motion for summary judgment as to the remaining count on December 22, 2009.[19]  Accordingly, Option One is now the only defendant in this adversary proceeding.

 After an extended period of inactivity, the Debtor filed the Motion for Summary Judgment on July 11, 2011.[20]  Option One filed the Cross-Motion on July 20, 2011, and the Opposition followed on August 1, 2011.  I conducted a hearing on the matter on August 17, 2011, at the conclusion of which, I took the matter under advisement.

 B.  The Undisputed Material Facts of Record

 The Debtor resides at the Property.[21]  She acquired full ownership of the Property following her divorce in 2001.[22]  At that time, the Property was encumbered by a mortgage held by Washington Mutual Bank ("WAMU").[23]  In order to remove her former husband's name from the WAMU mortgage, the Debtor refinanced the Property with Ameriquest on February 20, 2004.[24]  The Ameriquest loan had variable interest rate with a minimum interest rate of 7.750%

---

[18] *DiMare v. Ameriquest Mortg. Co. (In re DiMare)*, No. 08–1046, 2008 WL 4853382 (Bankr. D. Mass. Nov. 06, 2008).

[19] *See DiMare v. Ameriquest Mortg. Co. (In re DiMare)*, No. 08–1046, 2009 WL 5206628 (Bankr. D. Mass. Dec. 22, 2009);

[20] After Ameriquest was dismissed from this adversary proceeding, the docket reflects no activity until July 19, 2010, when the Debtor moved to reopen the case after it was administratively closed in error that same day.  Once the case was reopened, the Debtor did not request a pre-trial status conference until January 25, 2011, which Option One opposed on the basis that it intended to file a motion for summary judgment.  Despite numerous continuances and a pre-trial status conference held on March 17, 2011, the parties did not file their respective motions until July, 2011.

[21] Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 1; Defendant's Response to Facts, Docket No. 157 at ¶ 1.

[22] Defendant's Undisputed Facts, Docket No. 159 at ¶ 1; Plaintiff's Response to Facts, Docket No. 169 at ¶ 1.

[23] Defendant's Undisputed Facts, Docket No. 159 at ¶ 2; Plaintiff's Response to Facts, Docket No. 169 at ¶ 2.

[24] Defendant's Undisputed Facts, Docket No. 159 at ¶ 3; Plaintiff's Response to Facts, Docket No. 169 at ¶ 3.

and a maximum of 13.750%.[25]   During the initial two year period before the first interest rate

adjustment, the Debtor's monthly mortgage payment was $1,339.70.[26]

Approximately five months later, the Debtor defaulted on the Ameriquest loan.[27]   On July

8, 2004, she received a Notice of Intent to Foreclose from Ameriquest.[28]   The Debtor then

engaged in discussions with Ameriquest to bring the loan current and entered into a forbearance

agreement, requiring her to make one monthly payment by July 26, 2004, in the amount of

$1,695 and six subsequently monthly payments in the amount of $1,959.50.[29]   Ultimately, she

was unable to cure the arrearage.[30]   Accordingly, the Debtor received additional foreclosure

notices on November 22, 2004 and June 2, 2005.[31]

Around May 2005, the Debtor contacted East West Mortgage seeking to refinance the

Property, but her request was turned down.[32]   In July 2005, however, the Debtor received a

phone call from a representative of Aegis who told her that he was contacting "victims" of

---

[25] Defendant's Undisputed Facts, Docket No. 159 at ¶ 4; Plaintiff's Response to Facts, Docket No. 169 at ¶ 4.

[26] *Id.*; Solomon Affidavit, Docket No. 165, Ex. C.

[27] Defendant's Undisputed Facts, Docket No. 159 at ¶ 5; Plaintiff's Response to Facts, Docket No. 169 at ¶ 5.

[28] Defendant's Undisputed Facts, Docket No. 159 at ¶ 6; Affidavit of Nathalie K. Solomon in Support of Defendant
Option One Mortgage Corp.'s Opposition to Plaintiff's Motion for Summary Judgment and Defendant, Option One
Mortgage Corp.'s Cross-Motion for Partial Summary Judgment ("Solomon Affidavit"), Docket No. 165, Ex. A2 at
77:19-23; 78:1-4 ("Q. Is it fair to say you received it via certified mail in or around July 2004? A. Yes."); *but see*
Plaintiff's Response to Facts, Docket No. 169 at ¶ 6 ("Denied as worded. DiMare stated that the letter looked
familiar.  DiMare did not admit that she actually received a copy of the notice of Intent to Foreclose").

[29] Defendant's Undisputed Facts, Docket No. 159 at ¶¶ 7-9; Plaintiff's Response to Facts, Docket No. 169 at ¶¶ 7-9.

[30] Defendant's Undisputed Facts, Docket No. 159 at ¶ 10; Plaintiff's Response to Facts, Docket No. 169 at ¶¶ 10.

[31] Defendant's Undisputed Facts, Docket No. 159 at ¶¶ 11-12; Plaintiff's Response to Facts, Docket No. 169 at ¶¶
11-12.

[32] Defendant's Undisputed Facts, Docket No. 159 at ¶ 15; Plaintiff's Response to Facts, Docket No. 169 at ¶ 15.

Ameriquest to assist them in refinancing their homes.[33]    Based upon this representative's

knowledge of Ameriquest's lending and closing practices, which reflected her own experiences

with Ameriquest,[34] she grew to trust him.[35]

On July 25, 2005, the same Aegis representative visited her at the Property for two hours,

at which time she stated that she needed a 30-year fixed interest rate loan with a monthly

payment lower than what she was currently paying, which was close to $1,800.[36]    During her

meeting with the Aegis representative, the Debtor completed a refinancing loan application with

Aegis.[37]    On her application, the Debtor disclosed that her only income consisted of alimony and

child support payments totaling $3,466.66 per month.[38]

After the meeting with the Aegis representative, the Debtor spoke to him on the phone

regarding the refinancing on more than five other occasions.[39]    According to the Debtor, during

one of these calls, the Aegis representative informed her that she was approved for a 30-year

---

[33] Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 3; Defendant's Response to Facts, Docket No. 157 at ¶ 3 ("Option One is without information sufficient to admit or deny the allegations contained in Paragraph 3"); Defendant's Undisputed Facts, Docket No. 159 at ¶¶ 16-17; Plaintiff's Response to Facts, Docket No. 169 at ¶¶ 16-17.

[34] *See In re DiMare*, 2009 WL 5206628 at *1-2; *In re DiMare*, 2008 WL 4853382 at *1-2.

[35] Plaintiff's Undisputed Facts, Docket No. 148, Ex. 2 at ¶¶ 3-4; Defendant's Response to Facts, Docket No. 157 at ¶ 3-4 ("[Option One] is . . . without information sufficient to admit or deny the allegations . . .").

[36] Defendant's Undisputed Facts, Docket No. 159 at ¶ 18-20; Plaintiff's Response to Facts, Docket No. 169 at ¶ 18-20 ("20. Denied as worded. DiMare stated to the Aegis representative that her payment had to be lower than they [sic] currently were . . . DiMare never stated if she was referring to her regular monthly mortgage payment or the payment amount that she was supposed to pay under the forbearance agreement. . . .").

[37] Defendant's Undisputed Facts, Docket No. 159 at ¶ 13; Plaintiff's Response to Facts, Docket No. 169 at ¶ 13; Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 4, Ex. 1; Defendant's Response to Facts, Docket No. 157 at ¶ 4.

[38] Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 4, Ex. 1; *but see* Defendant's Response to Facts Docket No. 157 at ¶ 4 ("Option One admits that DiMare filled out a loan application with Aegis. Plaintiff [sic] is otherwise without information sufficient to admit or deny the allegations contained in Paragraph 4."). Although not raised in either statement of undisputed material facts, in her Complaint, the Debtor alleged that pursuant to her divorce agreement, her alimony would terminate in 2011 while the child support payments would end when her son completes his education or leaves college, which could have been before 2011. Complaint, Docket No. 1 at ¶ 16.

[39] Defendant's Undisputed Facts, Docket No. 159 at ¶ 21; Plaintiff's Response to Facts, Docket No. 169 at ¶ 21.

fixed interest rate loan with a monthly payment approximately $200 less than her current monthly payment.[40]  She did not inquire whether that monthly payment amount included the payment of taxes and insurance, but assumed it was based upon her prior conversations with the Aegis representative.[41]  Up until the day of the closing, which took place on August 8, 2005, the Debtor had had no contact with Option One and believed that Aegis was would act as lender and finance the transaction.[42]

At the closing, the same Aegis representative was accompanied by Attorney Ryan Bailey ("Attorney Bailey"), who conducted the closing.[43]  In addition to discovering that Option One would be financing the loan, the Debtor learned at the closing that the terms of the mortgage were different and the mortgage payment amount would be higher than what she had been promised by the Aegis representative.[44]  Specifically, the Debtor testified at her deposition that the Aegis representative told her that the interest rate had gone up and that the loan would be a 30-year fixed interest rate loan of 7.5%.[45]  Additionally, with the inclusion of taxes and insurance, the monthly payment required under the loan was $1,781.65.[46]

---

[40] Defendant's Undisputed Facts, Docket No. 159 at ¶ 22; Plaintiff's Response to Facts, Docket No. 169 at ¶ 22.

[41] Defendant's Undisputed Facts, Docket No. 159 at ¶ 23; Plaintiff's Response to Facts, Docket No.169 at ¶ 23; Plaintiff's Undisputed Facts, Docket No. 148 at ¶¶ 5-6; Defendant's Response to Facts, Docket No. 157 at ¶¶ 5-6 ("Option One is without information sufficient to admit or deny the allegations contained in Paragraph[s] [5 and 6].").

[42] Defendant's Undisputed Facts, Docket No. 159 at ¶¶ 24-25; Plaintiff's Response to Facts, Docket No. 169 at ¶¶ 24-25; Plaintiff's Undisputed Facts, Docket No. 148 at ¶¶ 7-8; Defendant's Response to Facts, Docket No. 157 at ¶¶ 7-8.

[43] Defendant's Undisputed Facts, Docket No. 159 at ¶ 26; Plaintiff's Response to Facts, Docket No. 169 at ¶ 26.

[44] Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 9; Defendant's Response to Facts, Docket No. 157 at ¶ 9 ("Option One is without information sufficient to admit or deny the allegations contained in Paragraph 9.").

[45] Defendant's Undisputed Facts, Docket No. 159 at ¶¶ 27, 33; Plaintiff's Response to Facts, Docket No. 169 at ¶¶ 27, 33.

[46] Defendant's Undisputed Facts, Docket No. 159 at ¶¶ 34-36; Plaintiff's Response to Facts, Docket No. 169 at ¶¶ 34-36.

The Debtor was very upset that the interest rate had changed.[47]  According to the Debtor,

the Aegis representative repeatedly told her that she did not need to sign the new loan papers, but

that she would be homeless if she did not.[48]  Just six days before the closing, she had received

yet another Notice of Intent to Foreclose from Ameriquest.[49]  At her deposition, the Debtor

testified that she went forward with the closing because she was terrified of the prospect of being

homeless by the end of the week.[50]

During the closing, the Debtor asked that all the loan documents presented to her be

explained.[51]  All of her questions were answered by either the Aegis representative or Attorney

Bailey.[52]  The Debtor read all the loan documents presented to her and had a good understanding

of the interest rate being applied to the loan, the amount of the monthly mortgage payment, and

the maturity of the loan.[53]  In the end, she executed a note (the "Note") in favor of Option One

and granted it a mortgage (the "Mortgage") to secure the obligation.[54]  As a result, the

---

[47] Defendant's Undisputed Facts, Docket No. 159 at ¶ 28; Plaintiff's Response to Facts, Docket No. 169 at ¶ 28.

[48] Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 10; Defendant's Response to Facts, Docket No. 157 at ¶ 10
("Option One is without information sufficient to admit or deny the allegations contained in Paragraph 10.").

[49] Defendant's Undisputed Facts, Docket No. 159 at ¶ 14; Plaintiff's Response to Facts, Docket No. 169 at ¶ 14.

[50] Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 11; Defendant's Response to Facts, Docket No. 157 at ¶ 11
("Admitted that DiMare executed a Note, Mortgage, and other loan documents on August 8, 2005.  Option One
otherwise denies the allegations contained in Paragraph 11.").  While the record demonstrates that Ameriquest had
sent the Debtor several Notices of Intent to Foreclose, there is no evidence that Ameriquest had scheduled a
foreclosure sale.  Nonetheless, for the purposes of summary judgment, Option One assumes the truth of that
allegation.

[51] Defendant's Undisputed Facts, Docket No. 159 at ¶ 29; Plaintiff's Response to Facts, Docket No. 169 at ¶ 29.

[52] Defendant's Undisputed Facts, Docket No. 159 at ¶ 30; Plaintiff's Response to Facts, Docket No. 169 at ¶ 30.

[53] Defendant's Undisputed Facts, Docket No. 159 at ¶¶ 31-32; Plaintiff's Response to Facts, Docket No. 169 at ¶¶
31-32 ("31. Denied as worded. DiMare stated that she read the documents presented to her to the best of her ability."
(underline in original)).

[54] Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 11; Defendant's Response to Facts, Docket No. 157 at ¶ 11
("Admitted that DiMare executed a Note, Mortgage, and other loan documents on August 8, 2005.  Option One
otherwise denies the allegations contained in Paragraph 11.").

Ameriquest loan was paid off in full and the impending foreclosure was averted.[55]  About a week

after the closing, the Debtor received a package of unsigned loan documents which she

confirmed were consistent with what she was told at the closing.[56]

Although the parties have produced a Notice of Right to Cancel form (the "NORC") with

a signed acknowledgment of delivery (the "Acknowledgment") in this case, the Debtor asserts

that it does not contain her signature and that she was never presented with such a form at the

closing.[57]  Not surprisingly, Option One denies her allegations and submitted an affidavit from

Alan T. Robillard, an expert in handwriting comparisons, in which he avers that the signature on

the Acknowledgment is authentic.[58]  Option One concedes that it did not provide the Debtor with

any closing documents or the NORC, but rather instructed Attorney Bailey to do so.[59]  Moreover,

Option One admits that its own closing file contains only a single copy of the NORC.[60]

At his deposition, Attorney Bailey testified that he had no recollection of the Debtor's

closing or the documents associated with it.[61]  Additionally, while he stated that he follows the

closing procedures for each mortgage lender he represents, he could not recall specifically the

---

[55] Defendant's Undisputed Facts, Docket No. 159 at ¶ 39; Plaintiff's Response to Facts, Docket No. 169 at ¶ 39.

[56] Defendant's Undisputed Facts, Docket No. 159 at ¶¶ 37-38; Plaintiff's Response to Facts, Docket No. 169 at ¶¶ 37-38.

[57] Plaintiff's Undisputed Facts, Docket No. 148 at ¶¶ 12-13, 30.

[58] Defendant's Response to Facts, Docket No. 157 at ¶¶ 12-13, 30; Affidavit of Alan T. Robillard, Docket No. 166 at ¶ 4.  Notably, the Defendant does not cite to this affidavit in support of its bare denial of the Debtor's allegations in the Defendant's Response to Facts.

[59] Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 14; Defendant's Response to Facts, Docket No. 157 at ¶ 14.

[60] Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 26; Defendant's Response to Facts, Docket No. 157 at ¶ 26.

[61] Plaintiff's Undisputed Facts, Docket No. 148 at ¶¶ 19, 23; Defendant's Response to Facts, Docket No. 157 at ¶¶ 19, 23.

procedures of any particular lender, including Option One.[62]  In the same vein, Attorney Bailey

could not remember how the closing package was provided to him, but testified that he was

"almost positive" that Option One generally gave him the closing packages, which generally

contained additional copies of the NORC for the borrower.[63]  Attorney Bailey testified that when

he received a closing package last minute, he generally would leaf through the package to make

sure that the major documents were included.[64]  It was also his general practice to provide two

copies of the NORC to the borrower at the closing along with all the other loan documents and to

have the borrower sign two copies of the NORC.[65]

     C.  The "Augmented" Record[66]

     As explained above, the Debtor raises several additional facts in her Opposition.  First,

the Debtor points to loan prequalification forms sent by Aegis to Option One on July 11, 2005,

and a "call log" between Aegis and Option One from July 28, 2005, as evidence of Option One's

involvement throughout the entire sales process.[67]  Second, she avers that she received certain

pre-closing disclosures that, consistent with her experience at the closing, did not reflect the final

---

[62] Plaintiff's Undisputed Facts, Docket No. 148 at ¶¶ 15-16, 20; Defendant's Response to Facts, Docket No. 157 at ¶¶ 15-16, 20.

[63] Plaintiff's Undisputed Facts, Docket No. 148 at ¶¶ 17-18; Defendant's Response to Facts, Docket No. 157 at ¶¶ 17-18.  Option One denies that Attorney Bailey was "unsure" how the closing package was provided to him and whether it provided him with a separate copy for the Debtor.  Instead, Option One states that he merely said he could not remember.  No matter how parties phrase it, the result is the same-- Attorney Bailey does not know.

[64] Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 21; Defendant's Response to Facts, Docket No. 157 at ¶ 21.

[65] Plaintiff's Undisputed Facts, Docket No. 148 at ¶¶ 24-25; Defendant's Response to Facts, Docket No. 157 at ¶¶ 24-25.

[66] This section contains properly supported factual assertions included as part of the Debtor's arguments in the Opposition but not in her statement of undisputed material facts.  As such, they will only be considered with respect to the Cross-Motion for the purpose of determining whether the Debtor has established the presence of a trialworthy issue.

[67] See Opposition, Docket No. 169 at Exs. A, D; Motion for Summary Judgment, Docket No. 148 at Ex. 23.  I note that the "call log" document is clearly a call log, but is otherwise completely incomprehensible.

terms of the Option One loan.  It is not entirely clear, however, when she received these disclosures.  Third, the Debtor states that the HUD-1 Settlement Statement (the "HUD-1") from the Option One loan reflects that she received only $5,199 from the closing compared to the $12,967.65 in settlement charges.[68]  Upon further review of the HUD-1, I note that the total principal amount of the Option One loan was $210,000, with Ameriquest having received a payoff in the amount of $191,833.35.[69]  Fourth, the Debtor calls my attention to various foreclosure notices sent to her by Option One, indicating that she defaulted on her first payment due under the Option One loan and Option One sent its first Notice of Intent to Foreclose by October 25, 2005.[70]

## IV. POSITIONS OF THE PARTIES

### The Debtor

With respect to Count I, the Debtor contends that "Option One was negligent in the handling and processing of her mortgage and Option One owed [her] a duty of care."[71]  She asserts that the Aegis representative won her "trust and confidence creating a fiduciary relationship and duty of care between DiMare and Aegis and ultimately, Option One."[72]  In her Opposition, she argues that Option One is liable for the actions of Aegis because Aegis was working with Option One "[f]rom the outset of the loan process" and Option One knew that it

---

[68] Plaintiff's Motion for Summary Judgment, Docket No. 148 at Ex. 10.

[69] *Id.*

[70] Opposition, Docket No. 169 at p. 11; Plaintiff's Motion for Summary Judgment, Docket No. 148 at Ex. 7.

[71] Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memorandum"), Docket No. 148 at p. 3.

[72] *Id.* at p. 4.

would be providing the loan through Aegis "throughout the entire sales process."[73]  As a result of Option One's breach of its duty and her trust, the Debtor represents that she suffered extreme stress and property damage because she was unable to spend money on necessary repairs and the Property has since deteriorated.

The primary thrust of the Debtor's argument in regards to Count II is that "[h]ad it not been for the promise of a lower monthly mortgage payment that DiMare replied [sic] on, DiMare would not have agreed to refinance her mortgage."[74]  She asserts that Option One knowingly made material misrepresentations and false promises to her with respect to the terms of the loan she would be receiving.  In support, she points to the Aegis representative's statement that she had been approved for a 30-year fixed interest rate loan with a monthly payment approximately $200 less than her current monthly payment and the various pre-closing documents she received that are wholly inconsistent with the Option One loan.

Through Count III, the Debtor asserts that Option One committed several violations of the Truth in Lending Act ("TILA")[75] and its enabling regulations ("Regulation Z"),[76] as well as its state law analog, the Massachusetts Consumer Credit Cost Disclosure Act (the "CCCDA").[77] In her Complaint, the Debtor cites Option One's failure to provide pre-closing disclosures that reasonably reflected the legal obligations between the parties as required by 12 C.F.R. § 226.17. In her memorandum in support of summary judgment, the Debtor further argues that she did not receive any pre-closing disclosures until after the closing and that some disclosures were never

---

[73] Opposition, Docket No. 169 at p. 4.

[74] Plaintiff's Memorandum, Docket No. 148 at p. 6.

[75] 15 U.S.C. § 1601 *et seq.*

[76] 12 C.F.R. § 226.1 *et seq.*

[77] Mass. Gen. Laws ch. 140D, § 1 *et seq.*

provided.  Additionally, the Debtor argues that she did not receive the required number of copies of the NORC and that the signature on the Acknowledgment is not hers.[78]

In Count IV, the Debtor argues that the Option One loan was not in her interest within the meaning of Mass. Gen. Laws ch. 183, § 28C.  In support, she cites the fact that she did not receive cash out of the transaction in excess of the closing fees, there was no change in the amortization period, and the monthly payment required under the Option One loan was substantially higher than the pre-default payment due under the Ameriquest loan.  Moreover, she contends that even the terms that improved, such as the .25% reduction in the interest rate and the change from a variable rate to a fixed rate, were insufficient to make the loan in her interest.  Lastly, the Debtor asserts that the Option One loan did not enable her to avoid foreclosure, but merely delay it.

With respect to Count V, the Debtor contends that the Option One loan was unconscionable because it is "unfair and deceptive in violation of Mass. Gen. Laws ch. 183 §28C and in violation of Mass. Gen. Laws ch. 140D §34, and therefore a violation of chapter 93A."[79]  In her memorandum, she discusses the facts surrounding a payment issue that led to Option One sending her notices of intent to foreclose, and concludes that Option One's tactics and behavior are unconscionable, unfair, and deceptive.  In the Opposition, the Debtor argues that the Option One loan was unconscionable because the terms of the loan at the closing were different than what she was promised and that she felt as though she had no alternative but to close in light of the impending foreclosure.

---

[78] The Debtor also objects to Option One's handwriting expert's report, but her objection speaks to the weight of the evidence, which is ultimately an issue for trial.

[79] Plaintiff's Memorandum, Docket No. 148 at p. 18.

Through Count VII, the Debtor asserts that she suffered emotional distress as a result of Option One's predatory lending practices, including the stressful events at the closing, her subsequent dealings with Option One representatives, and having been forced into foreclosure. Because she suffers from fibromyalgia, she alleges the stress is magnified.  Indeed, as a result, the Debtor contends that she has lost sleep and has been forced to take additional medication to control her pain.

The Debtor offers no explanation as to why she is entitled to summary judgment with respect to Count VI or why summary judgment should not enter in favor of Option One.

<u>Option One</u>

To start, Option One argues that both Counts I and II must fail as a matter of law because the Debtor had no contact with it prior to the closing and she has not provided any evidence to impute the allegedly wrongful conduct of Aegis to Option One.  In particular, Option One cites the complete absence of evidence of an agency relationship between the two.  Option One also asserts that the Debtor's claim for negligence must fail because she has not identified any duty owed to her in connection with the making of the loan.

With respect to Count III, Option One only seeks summary judgment to the extent that the Debtor's claim is premised on Option One's failure to provide her with pre-closing disclosures required under the CCCDA, because there is no such requirement with respect to refinancing transactions.  Option One contends that the remainder of her claim, namely, that she did not receive the required number of copies of the NORC, is a question of fact for trial.  While the Debtor asserts that the signature on the Acknowledgment is a forgery, Option One has produced a report from a handwriting expert who contends that the signature is authentic.

17

Next, Option One asserts that it is entitled to judgment as a matter of law with respect to Count IV because the Option One loan was in the Debtor's best interest.  In support, Option One cites the reduction in her monthly mortgage payment, the change in the interest rate from variable to fixed, the reduction in the interest rate, and the cancellation of an imminent foreclosure.  Option One argues that the Debtor's assertion that her monthly payment was not reduced is unavailing because the monthly payment disclosed on the Truth in Lending Disclosure was merely an estimate because the Ameriquest loan had an adjustable rate. Moreover, Option One notes that the Debtor admitted that the amount due under the Ameriquest loan at the time of the Option One closing was close to $1,800, which is less than the monthly payment due under the Option One loan.

With respect Count V, Option One contends that the Debtor's claim that the Option One loan was unconscionable must fail as a matter of law because the Debtor has not demonstrated that the loan was procedurally and substantively unfair.  In fact, Option One points out that the Debtor's arguments completely fail to address the required elements.  In any event, Option One argues that the Option One loan was not the product of unfair surprise because she admits that the terms were thoroughly explained to her and that she was repeatedly told that she did not have to close.  To the contrary, Option One asserts that it was the impending Ameriquest foreclosure, not any action on its part, that induced her to enter into the loan.  Additionally, the Debtor cannot show substantive unconscionability because she benefitted from the transaction by paying off her prior loan, decreasing her monthly mortgage payment, and avoiding foreclosure.

Similarly, Option One argues that the Debtor is not entitled to restitution under Count VI because she has not demonstrated that Option One was unjustly enriched.  Furthermore, Option

One asserts that she is estopped from bring this claim because a contract exists between the parties, giving her an adequate remedy at law.

Lastly, Option One seeks summary judgment with respect to Count VII on the basis that the Debtor has failed to prove each element of the cause of action, regardless of whether she intended to bring a claim for intentional or negligent infliction of emotional distress. In particular, Option One argues that there is no evidence in the record that its conduct was extreme or outrageous, or that there is any causal relationship between its conduct and her injuries. Alternatively, Option One contends that dismissal of Count VII is mandated because this Court lacks jurisdiction to hear a personal injury claim.

## V. <u>DISCUSSION</u>

### A.  <u>The Summary Judgment Standard</u>

Pursuant to Fed. R. Civ. P. 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[80]  "A 'genuine' issue is one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party."[81]  Material facts are those having the potential to affect the outcome of the suit under the applicable law.[82]  The absence of a material factual dispute is a "condition necessary," but not a "condition sufficient" to summary judgment. [83]

---

[80] Fed. R. Civ. P. 56(a) made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

[81] *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d. 1, 2 (1st Cir. 1999) (*quoting Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 427 (1st Cir. 1996)).

[82] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314-315 (1st Cir. 1995); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

[83] *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 764 (1st Cir.1994).

The party seeking summary judgment "always bears the initial responsibility . . . of identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on filed, together with the affidavits, if any,' which demonstrate the absence of a genuine issue of material fact."[84]   The nonmoving party must then "produce 'specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'"[85]   A trialworthy issue cannot be established by "conclusory allegations, improbable inferences, and unsupported speculation."[86]   The court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[87]   Therefore, when deciding cross-motions for summary judgment, the court must consider each motion separately.[88]

It is worth noting that when seeking summary judgment, a defendant may either affirmatively produce evidence negating an essential element of the plaintiff's claim[89] or identify materials suggesting that the plaintiff cannot produce any evidence as to an essential element of its claim.[90]   With respect to the latter, the Supreme Court has explained that:

> [T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a

---

[84] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

[85] *Triangle Trading Co.*, 200 F.3d at 2 (*quoting Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).

[86] *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

[87] *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).

[88] *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997).

[89] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 242 (considering the quantum of evidence required to oppose a motion for summary judgment where the defendant supported his motion with an affidavit affirmatively producing evidence negating an essential element of the plaintiff's complaint).

[90] *Celotex Corp. v. Catrett*, 477 U.S. at 320.

> situation, there can be "no genuine issue as to any material fact," since a complete
> failure of proof concerning an essential element of the nonmoving party's
> case necessarily renders all other facts immaterial. The moving party is "entitled to a
> judgment as a matter of law" because the nonmoving party has failed to make a
> sufficient showing on an essential element of her case with respect to which she
> has the burden of proof.[91]

Accordingly, "the burden on the moving party may be discharged by 'showing'- that is, pointing

out to the [trial] court- that there is an absence of evidence to support the nonmoving party's

case."[92]    After such a showing, "Rule 56[] therefore requires the nonmoving party[, who will

bear the burden of proof at trial on a dispositive issue,] to go beyond the pleadings and by [his

or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'"[93]

### B.  Count I - Negligence

The First Circuit has explained the standard for proving claim of negligence under

Massachusetts law:

> To prevail on a negligence claim under Massachusetts law, "a plaintiff must show
> by a preponderance of the evidence (1) a legal duty owed by defendant to
> plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual
> damage or injury."[94]

Notably, the Debtor does not identify any duty owed to her by Option One.  Instead, she asserts

that the conduct of the Aegis representative won her "trust and confidence creating a fiduciary

relationship and duty of care between DiMare and Aegis and ultimately, Option One."[95]  There

---

[91] *Id.* at 322-323.

[92] *Id.* at 325.

[93] *Id.* at 324.

[94] *Primus v. Galgano*, 329 F.3d 236, 241 (1st Cir. 2003) (*quoting Heinrich v. Sweet*, 308 F.3d 48, 62-63 (1st Cir. 2002) (internal quotations omitted)).  *See Frappier v. Countrywide Home Loans, Inc.*, 645 F.3d 51, 58 (1st Cir. 2011); *Jorgensen v. Mass. Port Auth.*, 905 F.2d 515, 522 (1st Cir. 1990).

[95] Plaintiff's Memorandum, Docket No. 148 at p. 4.

are two problems with this theory. First, there is no evidence in the record that warrants imputing the conduct of Aegis to Option One.[96] Second, even assuming it were appropriate to do so, "under Massachusetts law the relationship between a lender and a borrower, without more, does not establish a fiduciary relationship."[97] Although "Massachusetts case law does allow some room for *unusual facts* in which one side invites, and the other side reposes, a special trust and reliance,"[98] the Debtor has failed to articulate any facts or cite any authority to suggest that this was anything other than an average refinancing transaction. It is irrelevant that Aegis won her trust and confidence unless it was knowingly accepted. Put simply, "[a] plaintiff alone . . . cannot create a fiduciary relationship."[99]

Therefore, the Debtor having failed to establish the presence of a trialworthy issue with respect to this element of her claim, I find that Option One is entitled to judgment as a matter of law as to Count I of the Complaint.[100]

### C. Count II – Promissory Fraud

Under Massachusetts law, to prove fraud in the inducement, a plaintiff is "required to establish the elements of common law deceit, which include 'misrepresentation of a material

---

[96] The only evidence of any contact between Option One and Aegis are loan prequalification forms sent by Aegis to Option One on July 11, 2005, and an incomprehensible document the Debtor states is a "call log" between Aegis and Option One from July 28, 2005. *See* Opposition, Docket No. 169 at Exs. A, D; Motion for Summary Judgment, Docket No. 148 at Ex. 23. Neither establish what the Debtor failed to even allege in her complaint; namely, an agency relationship between the two.

[97] *Frappier v. Countrywide Home Loans, Inc.*, 645 F.3d at 59 (*quoting FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 102 (1st Cir. 2009)). *See Clark v. Rowe*, 428 Mass. 339, 346 (1998); *Urman v. South Bos. Sav. Bank*, 424 Mass. 165, 168 (1997); *Superior Glass Co. v. First Bristol Cnty. Nat'l Bank*, 380 Mass. 829, 832 (1980); *Nat'l Shawmut Bank of Bos. v. Hallett*, 322 Mass. 596, 602 (1948);

[98] *Frappier v. Countrywide Home Loans, Inc.*, 645 F.3d at 59 (emphasis added).

[99] *Sullivan v. Decision One Mortg. (In re Sullivan)*, 346 B.R. 4, 20 (Bankr. D. Mass. 2006) (*citing Broomfield v. Kosow*, 349 Mass. 749 (1965)).

[100] While I need not reach this issue in light of the Debtor's failure to demonstrate that Option One owed her a duty, I note that she has also failed to clearly and coherently explain how the duty she alleged existed was breached.

fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying.'"[101]   It is well established that the parol evidence rule will not apply to bar evidence of prior misrepresentations in an action for fraud in the inducement.[102]   Nonetheless, the plaintiff's reliance on the prior misrepresentation must be reasonable.

Here, the Debtor summarizes her argument by stating, "[h]ad it not been for the promise of a lower monthly mortgage payment that DiMare replied [sic] on, DiMare would not have agreed to refinance her mortgage."[103]   Even if that were true, such reliance would be grossly unreasonable.  The Debtor concedes that prior to signing the Note and Mortgage, she was well aware that the terms of the loan were not what she had been promised by the Aegis representative.[104]   Indeed, she had the mortgage terms explained to her, her questions answered, and a good understanding of the of the applicable interest rate, monthly mortgage payment, and maturity of the Option One loan before signing the Note and Mortgage.[105]   Nevertheless, the Debtor went forward with the closing.[106]   While I am not unsympathetic to the pressures that the Debtor was under given Ameriquest's impending foreclosure, she simply has not stated a cause

---

[101] *Commerce Bank & Trust Co. v. Hayeck*, 46 Mass. App. Ct. 687, 693 (1999) (*quoting Hogan v. Riemer*, 35 Mass. App. Ct. 360, 365 (1993)).  *See Storie v. Household Intern., Inc.*, No. 03-40268-FDS, 2005 WL 3728718 *7 (D. Mass. Sept. 22, 2005); *In re Sullivan*, 346 B.R. at 19.

[102] *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 711 n. 5 (1990); *Broomfield v. Kosow*, 349 Mass. at 759; *Shawmut-Canton LLC v. Great Spring Waters of America, Inc.*, 62 Mass. App. Ct. 330, 335 (2004); *Commerce Bank & Trust Co. v. Hayeck*, 46 Mass. App. Ct. at 693.

[103] Plaintiff's Memorandum, Docket No. 148 at p. 6.

[104] Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 9; Defendant's Response to Facts, Docket No. 157 at ¶ 9 ("Option One is without information sufficient to admit or deny the allegations contained in Paragraph 9.").

[105] Defendant's Undisputed Facts, Docket No. 159 at ¶¶ 29-32; Plaintiff's Response to Facts, Docket No. 169 at ¶¶ 29-32 ("31. Denied as worded. DiMare stated that she read the documents presented to her to the best of her ability." (underline in original)).

[106] Plaintiff's Undisputed Facts, Docket No. 148 at ¶ 11; Defendant's Response to Facts, Docket No. 157 at ¶ 11 ("Admitted that DiMare executed a Note, Mortgage, and other loan documents on August 8, 2005.  Option One otherwise denies the allegations contained in Paragraph 11.").

of action for fraud in the inducement.  Accordingly, Option One is entitled to judgment as a matter of law with respect to Count II of the Complaint.

     D.  <u>Count III – Violations of the Federal and/or State Truth in Lending Acts</u>

Having reviewed the Complaint, the Motion for Summary Judgment, the Cross-Motion, and the Opposition, I find that neither party has demonstrated that they are entitled to judgment as a matter of law with respect to Count III.  First, while the Debtor contends that the signature on the Acknowledgment is not hers, Option One has come forward with sufficient evidence in the form of a handwriting expert's report indicating that the signature is authentic to demonstrate that a material fact is in dispute.  Accordingly, the issue of whether the Debtor received the requisite number of copies of the NORC necessitates a trial.

With respect to the remainder of the Debtor's claim under Count III, I find that both the record and the parties arguments are too inadequately developed for summary judgment to be appropriate.  According to the Complaint, this portion of the Debtor's claim arises from Option One's failure to provide accurate pre-closing disclosures as required by 12 C.F.R. § 226.17.  In the Motion for Summary Judgment, however, the Debtor appears to argue that she did not receive any pre-closing disclosures until after the closing.  Moreover, she asserts that some disclosures were never provided, but it is unclear whether she is referring to required pre-closing disclosures or the closing documents themselves.  The Debtor contends that "[t]he documents DiMare received are different than the documents produced by Option One . . . ."[107] Additionally, she seems to argue contrary to the agreed facts by asserting that "the loan appears

---

[107] Plaintiff's Memorandum, Docket No. 148 at p. 9.

to be a variable rate" and that she was entitled to disclosures required for adjustable rate mortgages.[108]

In the Cross-Motion, Option One states that it was not required to provide the Debtor with pre-closing disclosures because a refinancing is not a "residential mortgage transaction" as that term is defined.[109]   In support, Option One cites 209 C.M.R. § 32.19(1)(a), but this section relates to the disclosures required by 209 C.M.R. § 32.18, the analog to 12 C.F.R. § 226.18, not 12 C.F.R. § 226.17.  In the Opposition, the Debtor simply quotes several sections of Regulation Z and the Massachusetts analog without expressly explaining their relevance.

Having struggled to understand the parties arguments and failed, I find that a trial with additional briefing is necessary to resolve this matter.  Recognizing that the parties first attempt to explain the facts and articulate their legal contentions was far from successful and wanting to avoid having to do their homework for them, I will provide detailed briefing instructions in my amended pre-trial order.

E.  Count VI – Borrower's Interest

Mass. Gen. Laws ch. 183, § 28C, colloquially known as the "borrower's interest" statute, provides in relevant part:

> A lender shall not knowingly make a home loan if the home loan pays off all or part of an existing home loan that was consummated within the prior 60 months or other debt of the borrower, unless the refinancing is in the borrower's interest.[110]

---

[108] *Id.* 9.

[109] *See* 209 C.M.R. § 32.02 (2005); *see also Vincent v. Ameriquest Mortg. Co. (In re Vincent)*, 381 B.R. 564, 570 n. 4 (Bankr. D. Mass. 2008).

[110] Mass. Gen. Laws ch. 183, § 28C(a).  *See also* 209 C.M.R. § 53.03.

The statute expressly states that the "'borrower's interest' standard shall be narrowly construed," and places the burden on the lender to demonstrate a refinancing meets that standard.[111]   The statute further provides a nonexclusive list of factors to be considered in determining whether the refinancing is in the borrower's interest:

> (1) the borrower's new monthly payment is lower than the total of all monthly obligations being financed, taking into account the costs and fees;
> (2) there is a change in the amortization period of the new loan;
> (3) the borrower receives cash in excess of the costs and fees of refinancing;
> (4) the borrower's note rate of interest is reduced;
> (5) there is a change from an adjustable to a fixed rate loan, taking into account costs and fees; or
> (6) the refinancing is necessary to respond to a bona fide personal need or an order of a court of competent jurisdiction.[112]

The corresponding regulations identify an additional factor: "the time it takes to recoup the costs of refinancing, taking into account the costs and fees."[113]

Notably, the borrower's interest statute does not specifically set forth a remedy for a violation of any of its provisions, but nevertheless suggests that a borrower would be entitled to costs and attorneys' fees for successfully bringing such an action against a lender.[114]   As the borrower's interest statute was enacted through the same legislation[115] that created the Predatory Home Loan Practices Act,[116] it is possible that the legislature intended that violations of the borrower's interest statute would similarly constitute a violation of Mass. Gen. Laws ch. 93A.[117]

---

[111] *Id.*

[112] *Id.*

[113] 209 C.M.R. § 53.04(3)(g).

[114] Mass. Gen. Laws ch. 183, § 28C(b).

[115] *See* H.B. 4880, St. 2004, ch. 268, § 1 (2004)

[116] Mass. Gen. Laws ch. 183C, § 1 *et seq.*

[117] *See* Mass. Gen. Laws ch. 183C, § 18(a).

This, however, is mere speculation.  Only a handful of cases even cite to this provision and there is no reported decision in which a borrower prevailed on such a cause of action.

Although there is little guidance with respect to the borrower's interest statute, based upon the factors identified, it appears that the standard is a comparative one such that one must look to the prior transaction that is being refinanced through the new transaction.  That is, the statute does not require the refinancing to be an independently provident decision, but only that under the circumstances, the refinancing is in the borrower's interest when compared with the transaction it refinanced.  Still, the "borrower's interest" is undefined.  Therefore, in the absence of an express definition, I conclude that the legislature must have intended the most common meaning of the phrase–simply that the benefit to borrower resulting from the prospective refinancing outweighs any corresponding burden.

Certainly, the Debtor had a "bona fide personal need," namely, the avoidance of Ameriquest's impending foreclosure.  This was unquestionably the single most important factor in motivating the Debtor, and Option One contends that this "need" weighs in favor of the loan having been in her interest.  As the Debtor does not argue otherwise, I will accept Option One's contention that avoiding foreclosure was in the Debtor's interest.[118]

While there was no change in the amortization period of the new loan and the Debtor did not receive cash in excess of the closing fees and costs, it is undisputed that the Option One loan had a fixed interest rate that was lower than the Ameriquest loan's adjustable rate.  The Debtor asserts that these are not meaningful differences because the Ameriquest loan's rate was fixed at the time of her default and was only .25% higher than that of the Option One loan.  I disagree.

---

[118] The Debtor asserts, however, that foreclosure was not avoided, but merely delayed as she immediately defaulted on the first payment due under the Option One loan.  This suggests a fact that remains unproven; namely, that at the time of the closing, the Debtor's eventual default on the Option One loan was a certainty.

While the improvement may not have been immediately significant, it was nevertheless an improvement over the terms of the Ameriquest loan and in her interest.

Admittedly, the monthly payments involved present a closer and more difficult issue. The Ameriquest loan's monthly payments during its initial fixed rate period were substantially lower than those required under the Option One loan. Nonetheless, the Debtor was in default at the time the Option One loan closed and she concedes that the payments that she was actually required to make at that time were higher than those under the Option One loan. I further note that this all occurred before the first upward rate adjustment under the Ameriquest loan. On a practical level, this created a situation where the Debtor was unable to take advantage of the then lower contractual rate under the Ameriquest loan because she could not make the higher payments to cure her default. In this sense, the Option One loan provided her a better opportunity to retain her home than she had under the prior loan. I concede, however, that in light of the Debtor's inability to make the lower contractual rate payments under the Ameriquest loan in the first instance, it was unlikely at best that she could stay current with a higher payment, even if it was less than what was required to cure her default. Ultimately, I do not find that this factor tips in favor of either party.

Although not listed as a factor in the statute, I note that the record before me suggests that the Debtor lacked viable refinancing alternatives. Consideration of this factor goes hand in hand with both the Debtor's bona fide personal need and the relative benefit provided by the Option One loan's mortgage payment. Part of the Debtor's argument is that the Option One loan was not in her interest is because she needed a substantially better loan. It is undisputed, however, that the Debtor contacted other parties seeking to refinance the Ameriquest loan and was rejected. While impending foreclosures do not give lenders carte blanche to force oppressive

terms on hard pressed borrowers under the guise of helping them, I must consider that the Option

One loan may have been the only loan available to the Debtor.  Moreover, to the extent that the

Debtor alleged that her alimony and child support income would terminate in 2011, there appears

to be a serious question as to her ability to repay *any* loan.  In this sense, refinancing may not

have been in the Debtor's interest in the first place.  Nevertheless, neither party has argued this,

rather arguing, either implicitly or explicitly, that refinancing was in the Debtor's interest.

Under the totality of the circumstances and weighing the factors identified by the statute,

I find that the Debtor has not rebutted Option One's showing that the refinancing transaction was

in her interest as contemplated by Mass. Gen. Laws ch. 183, § 28C.  While not perfect, the

Option One loan offered the Debtor a chance, though admittedly slim, to keep her home and as

such, was a benefit to her.  That being said, the Debtor correctly notes that "a lender may run

afoul of Chapter 93A by knowingly setting up a borrower for default."[119]  Unfortunately, she did

not allege a violation of Mass. Gen. Laws ch. 93A in the Complaint.  Regardless, the Debtor has

offered no reason why summary judgment should not enter in favor of Option One with respect

to Count IV as pled.

F.  Count V - Unconscionability

In *Waters v. Min Ltd.*,[120] the Massachusetts Supreme Judicial Court observed that:

The doctrine of unconscionability has long been recognized by common law
courts in this country and in England. "Historically, a [contract] was considered
unconscionable if it was 'such as no man in his senses and not under delusion
would make on the one hand, and as no honest and fair man would accept on the
other.' Later, a contract was determined unenforceable because unconscionable

---

[119] Plaintiff's Memorandum, Docket No. 148 at 14 (*quoting Frappier v. Countrywide Home Loans, Inc.*, No. 09-cv-11006-MAP, 2010 WL 3944687 *2 (D. Mass. Oct. 7, 2010), *aff'd in part, rev'd in part*, 645 F.3d 51 (1st Cir. 2011)).  The Debtor's citation of *Commonwealth v. Fremont Inv. & Loan*, 452 Mass. 733 (2008), is equally inapposite because that case involved alleged violations of Mass. Gen. Laws ch. 93A and Mass. Gen. Laws ch. 183*C*, not Mass. Gen. Laws ch. 183, § 28C..

[120] *Waters v. Min Ltd.*, 412 Mass. 64 (1992)

when 'the sum total of its provisions drives too hard a bargain for a court of conscience to assist."

\* \* \*

Gross disparity in the values exchanged is an important factor to be considered in determining whether a contract is unconscionable. "[C]ourts [may] avoid enforcement of a bargain that is shown to be unconscionable by reason of gross inadequacy of consideration accompanied by other relevant factors."[121]

The United States District Court for the District of Massachusetts in *United Companies Lending Corp. v. Sargeant* further explained the application of the doctrine of unconscionability under Massachusetts law:

Unconscionability is a question of law to be assessed at the time the contract was executed by the parties. *See Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 291, 408 N.E.2d 1370 (1980). It is a case-specific assessment. "Because there is no clear, all-purpose definition of 'unconscionable,' nor could there be, unconscionability must be determined on a case by case basis, giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." *Id.* 381 Mass. at 292–93, 408 N.E.2d 1370 (internal citations omitted) . . . .

Under Massachusetts law, the doctrine of unconscionability recognizes procedural and substantive unconscionability. *See Zapatha*, 381 Mass. at 292–93, 294 n. 13, 408 N.E.2d 1370. Procedural unconscionability evaluates the circumstances under which the contract was executed to determine if it is the product of unfair surprise. Substantive unconscionability evaluates the actual terms of the contract to determine if they are substantively unfair. "If the sum total of the provisions of a contract drive too hard a bargain, a court of conscience will not assist its enforcement." *Waters*, 412 Mass. at 68, 587 N.E.2d 231 (*citing Campbell Soup Co. v. Wentz*, 172 F.2d 80, 84 [3d Cir. 1948] ) . . . .

\* \* \*

The fact that this conduct constitutes an unfair or deceptive practice, however, does not mean that this conduct was unconscionable.[122]

---

[121] *Id.* at 66, 69 (citations omitted).

[122] *United Cos. Lending Corp. v. Sargeant*, 20 F.Supp.2d 192, 206-207 (D. Mass. 1998). *See Laudani v. Tribeca Lending Corp. (In re Laudani)*, 401 B.R. 9, 34 (Bankr. D. Mass. 2009) ; *In re Sullivan*, 346 B.R. at 25; *Maxwell v. Fairbanks Capital Corp. (In re Maxwell)*, 281 B.R. 101, 127 (Bankr. D. Mass. 2002).

As recognized by Judge Feeney of this district, "[t]he test [for unconscionability] is a conjunctive one," and the plaintiff must prove both procedural and substantive unconscionability to prevail.[123]

Despite the fact that unconscionability is an intensely factual question with both procedural and substantive components, the Debtor has made no effort to argue the elements of her cause of action or otherwise identify facts that would suggest the existence of a trialworthy issue. Indeed, in the section of her memorandum in support of summary judgment dealing with unconscionability, the Debtor states in a conclusory manner that "DiMare's loan is unfair and deceptive in violation of Mass. Gen. Laws ch. 183 §28C and in violation of Mass. Gen. Laws ch. 140D §34, and therefore a violation of chapter 93A,"[124] and rather than discussing the closing, vaguely discusses the circumstances leading to Option One sending her foreclosure notices. Despite Option One having identified this problem in the Cross-Motion, the Opposition does little to correct it. In response, she states:

> The actions of Aegis and Option One taken together as a whole during the entire loan process including the closing and servicing of the loan that [sic] constitutes the fraud and unconscionability. . . . While expectations were set during the loan application process, DiMare's troubles began at her loan closing, and it was at this closing that she learned her mortgage was with Option One. It was at the closing that she was told the rate and payment amount would be higher than promised. It was at the closing that she learned she would not be able to afford her new mortgage and it was at the closing that she was told if she did not sign the papers she would be homeless and it was at the closing that DiMare felt that she did not have any alternative but to sign the mortgage papers.[125]

The only fact that the Debtor points to is that at the closing, she learned that the interest rate and payment would be higher than expected. This, however, does not constitute an "*unfair*

---

[123] *In re Sullivan*, 346 B.R. at 26 (*quoting Storie v. Household Intern., Inc.*, No. 03–40268–FDS, 2005 WL 3728718 *9 (D. Mass. Sept. 22, 2005)); s*ee In re Laudani*, 401 B.R. at 34.

[124] Plaintiff's Memorandum, Docket No. 148 at p. 18.

[125] Opposition, Docket No. 169 at p. 12.

surprise."[126]   Moreover, it is not clear that the Aegis representative's warnings about the consequences of not going through with the transaction rose to the level of "[h]igh pressure sales tactics" in light of Ameriquest's impending foreclosure.[127]   Even assuming, *arguendo*, that the Debtor has satisfied the requirement of procedural unconscionability, or at least demonstrated the existence of a trialworthy issue, she has failed to point to any oppressive terms.   Accordingly, Option One is entitled to judgment as a matter of law with respect to Count V.

### G. Count VI - Restitution

From the outset, the Court notes that restitution is not a cause of action, but an equitable remedy to prevent unjust enrichment of the defendant to the detriment of the plaintiff.[128]   "Unjust enrichment is defined as 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"[129]   To demonstrate unjust enrichment, the plaintiff must show: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law."[130]

---

[126] See In re Laudani, 401 B.R. at 35 ("Even if the Debtor were surprised that he was unable to obtain more cash from his refinancing with Tribeca than he ultimately received, that surprise is not the equivalent of the unfair surprise component needed to establish procedural unconscionability."). I further note that the Debtor has failed to demonstrate that the pre-closing representations regarding the mortgage terms rose to the level of fraud or misrepresentation.

[127] *See Waters v. Min Ltd*., 412 Mass. at 234.

[128] *Keller v. O'Brien*, 425 Mass. 774, 778-779 (1997); *Santagate v. Tower*, 64 Mass. App. Ct. 324, 336 (2005)

[129] *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F.Supp. 340, 347 (D. Mass. 1982) (*quoting* 66 Am.Jur.2d Restitution and Implied Contracts § 3 (1962)). *See Agin v. Mortg. Elec. Registration Sys., Inc. (In re Bower)*, No. 10–1092, 2010 WL 4023396 *7 (Bankr. D. Mass. Oct. 13, 2010); *Braunstein v. McCabe (In re the McCabe Group, PC)*, 424 B.R. 1, 15 (Bankr. D. Mass. 2010); *Santagate v. Tower*, 64 Mass. App. Ct. at 329.

[130] *Smith v. Jenkins*, 626 F.Supp.2d 155, 171 (D. Mass. 2009) (*quoting LaSalle Nat'l Bank v. Perelman*, 82 F.Supp.2d 279, 294-295 (D. Del. 2000)). *See Keller v. O'Brien*, 425 Mass. at 778; *Salomon v. Terra*, 394 Mass. 857, 859 (1985); *Nat'l Shawmut Bank v. Fidelity Mut. Life Ins. Co.*, 318 Mass. 142, 146 (1945); *Sutton v. Valois*, 66 Mass. App. Ct. 258, 267 (2006); *Santagate v. Tower*, 64 Mass. App. Ct. at 329; *Stevens v. Nagel*, 64 Mass. App. Ct. 136, 141 (2005); *Cox v. Cox*, 56 Mass. App. Ct. 864 (2002).

In her Complaint, the Debtor alleged that "the defendants received money in circumstances in which it would be unjust and unfair to allow them to retain it."[131]   In particular, she alleged that the "fees and costs of the loans were excessive in relation to the standards of the mortgage loan market."[132]   The Debtor, however, did not address this count in either the Motion for Summary Judgment or the Opposition.   On the other hand, Option One argues in the Cross-Motion that the Debtor failed to demonstrate any unjust enrichment or the absence of an adequate remedy at law.   To the extent that the Debtor has not cited any facts or legal authority in support of her allegations, summary judgment must enter in favor of Option One with respect to Count VI.

H.   <u>Count VII – Emotional Distress</u>

In her Complaint, the Debtor asserted that "[t]he actions of the defendants, as described herein, caused the plaintiff to suffer emotional distress of a nature and degree  that is outrageous and intolerable in a civilized society."[133]   She did not, however, differentiate between negligent or intentional infliction of emotional distress.[134]   While I agree with Option One's contention that

---

[131] Complaint, Docket No. 1 at ¶ 75.

[132] *Id.* at ¶ 76.

[133] *Id.* at ¶ 79.

[134] The Massachusetts Supreme Judicial Court has held that a plaintiff must prove the following in order to recover for negligent infliction emotional distress: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case."  *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982).  In contrast, to prove intentional infliction of emotion distress, the plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community,' (3) that the actions of the defendant were the cause of the plaintiff's distress, and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature that 'no reasonable man could be expected to endure it.'"  *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976) (citations omitted).

the Debtor has failed to satisfy the applicable standard for either,[135] the infliction of emotional distress pled as an independent cause of action is a personal injury tort claim over which the bankruptcy court has no jurisdiction.[136]  Accordingly, Count VII must be dismissed.

## V. CONCLUSION

In light of the foregoing, I will enter an order denying the Motion for Summary Judgment, granting the Cross-Motion with respect to Counts I, II, IV, V, VI, and VII, and scheduling a trial with respect to Count III.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: November 15, 2011

Counsel Appearing:

    Barbara J. Santiano, Burlington, MA,
        for the Debtor
    Deidre M. Keady, Nathalie K. Salomon, Harmon Law Offices, P.C., Newton Highlands,
        MA, for Option One Mortgage Corp.

---

[135] A claim for negligent infliction of emotional distress fails because, as explained above, the Debtor did not establish that Option One owed her a duty.  With respect to intentional infliction of emotional distress, the Debtor has proffered no evidence to even raise a trial worthy issue regarding the first two elements.

[136] 28 U.S.C. § 157(b)(5) ("The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."); *see In re Laudani*, 401 B.R. at 42; *Nosek v. Ameriquest Mortg. Co. (In re Nosek)*, No. 04-4517, 2006 WL 1867096 *17 (Bankr. D. Mass. June 30, 2006), *rev'd on other grounds*, *Ameriquest Mortg. Co. v. Nosek (In re Nosek)*, 354 B.R. 331 (D. Mass. 2006)